UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

|  |  |
|---|---|
| DERRICK PALMER, KENDIA MESIDOR, BENITA ROUSE, ALEXANDER ROUSE, BARBARA CHANDLER, LUIS PELLOT-CHANDLER, and DEASAHNI BERNARD,<br><br>Plaintiffs,<br><br>vs.<br><br>AMAZON.COM, INC., and AMAZON.COM SERVICES LLC,<br><br>Defendants. | Case No. 1:20-cv-2468-BMC<br><br>**Oral Argument Requested** |

---------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT ...................................................................................................................... 3

I. The Court Should Dismiss Plaintiffs' Section 200 And Public-Nuisance Claims Because OSHA Has Primary Jurisdiction Over Workplace Safety ...................... 3

II. Plaintiffs' Requests For Injunctive Relief Are Moot And Plaintiffs Lack Standing To Seek Injunctive Relief With Respect To Amazon's Productivity Policies ...... 8

III. Plaintiffs Fail To State A Section 200 Claim ......................................................... 9

    A. The OSH Act Preempts Plaintiffs' Section 200 Claim ............................. 10

    B. Plaintiffs Fail To Plausibly Allege That Amazon's Practices Caused Their Risk Of Exposure To COVID-19 ..................................... 11

IV. Plaintiffs Fail To State A Public-Nuisance Claim ............................................... 14

    A. Plaintiffs Cannot Bring A Private Action For Public Nuisance ............. 14

    B. Plaintiffs Do Not Allege Interference With Any Public Right ............... 17

    C. Plaintiffs Do Not Plausibly Allege Actual Or Proximate Cause ............. 18

V. The Court Should Dismiss Employee-Plaintiffs' Public-Nuisance And Section 200 Claims Because They Are Barred By New York's Workers' Compensation Statute ................................................................................................................... 19

VI. The Court Should Dismiss Plaintiffs' Putative Class Claims For Unpaid Or Untimely Paid Wages Under Section 191 ............................................................. 21

    A. Quarantine Benefits And Supplemental Pay Are Not "Wages" Under Section 191 ................................................................................... 22

    B. Plaintiffs Lack Standing To Challenge Hypothetical Future Underpayments ........................................................................................ 24

    C. Plaintiffs Cannot Bring A Section 191 Claim Based On A Purported Statutory Right, As Opposed To A Contractual Right ........... 25

CONCLUSION ................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
    96 N.Y.2d 280 (2001) ...........................................................................14, 15, 16, 17

*A.S.M. v. Warden, Stewart Cty. Detention Ctr.*,
    No. 7:20-cv-62, 2020 WL 2988307 (M.D. Ga. June 3, 2020) ..................................7

*Acevedo v. Consol. Edison Co. of N.Y.*,
    596 N.Y.S.2d 68 (1st App. Div. 1993) ...................................................................20

*In re AFL-CIO*,
    No. 20-1158, 2020 WL 3125324 (D.C. Cir. June 11, 2020) ....................................5

*Andryeyeva v. N.Y. Health Care, Inc.*,
    33 N.Y.3d 152 (2019) .............................................................................................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................3, 14, 19

*Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*,
    785 F.3d 710 (D.C. Cir. 2015) .................................................................................7

*Atlas Roofing Co. v. OSHRC*,
    430 U.S. 442 (1977).................................................................................................11

*In re Babb*,
    264 N.Y. 357 (1934) ...............................................................................................21

*Bardere v. Zafir*,
    477 N.Y.S.2d 131 (1st App. Div. 1984) ..................................................................20

*Becker v. Schwartz*,
    46 N.Y.2d 401 (1978) .............................................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................3, 14, 19

*Bernhardt v. Pfizer, Inc.*,
    No. 1:00-cv-4042, 2000 WL 1738645 (S.D.N.Y. Nov. 22, 2000) ...........................6

*BHC Nw. Psychiatric Hosp., LLC v. Sec'y of Labor*,
    951 F.3d 558 (D.C. Cir. 2020) ................................................................................11

*Burlew v. Am. Mut. Ins.*,
    63 N.Y.2d 412 (1984) .............................................................................................21

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
    59 N.Y.2d 314 (1983) ...............................................................................14

*Castillo v. Amjack Leasing Corp.*,
    924 N.Y.S.2d 156 (2d App. Div. 2011) ....................................................13

*Chevron Corp. v. Donziger*,
    833 F.3d 74 (2d Cir. 2016) .......................................................................24

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .....................................................................................9

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) .......................................................................3

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .................................................................................25

*Crawford v. Coram Fire Dist.*,
    No. 12-cv-3850, 2015 WL 10044273 (E.D.N.Y. May 4, 2015) ...............22

*DHS v. MacLean*,
    574 U.S. 383 (2015) .................................................................................21

*Diamond v. Gen. Motors Corp.*,
    20 Cal. App. 3d 374 (1971) .....................................................................18

*Duffy v. Baldwin*,
    124 N.Y.S.3d 110 (3d App. Div. 2020) ....................................................15

*Ebaseh-Onofa v. McAllen Hosps., LP*,
    No. 13-14-319-CV, 2015 WL 2452701 (Tex. App. May 21, 2015) ..........12

*Ellis v. Tribune Television Co.*,
    443 F.3d 71 (2d Cir. 2006) .....................................................................4, 5

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ...................................................................................6

*Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y., LLC*,
    405 F. Supp. 3d 408 (W.D.N.Y. 2019) ....................................................14

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
    505 U.S. 88 (1992) ..............................................................................10, 11

*Greenberg v. Sutter*,
    173 Misc. 2d 774 (N.Y. Sup. Ct. 1997) ...................................................21

*Haire v. Bonelli*,
   870 N.Y.S.2d 591 (3d App. Div. 2008) ......................................................................17

*Hartnett v. N.Y.C. Transit Auth.*,
   86 N.Y.2d 438 (1995) ...............................................................................................20

*Hunter v. Planned Bldg. Servs., Inc.*,
   No. 715053/2017, 2018 WL 3392476 (N.Y. Sup. Ct. June 20, 2018) ......................25

*Hussain v. Pakistan Int'l Airlines Corp.*,
   No. 11-cv-932, 2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012) ...............................25

*Jacobsen v. N.Y.C. Health and Hosps. Corp.*,
   No. 12-cv-7460, 2013 WL 4565037 (S.D.N.Y. Aug. 28, 2013)................................11

*Krenger v. Pa. R. Co.*,
   174 F.2d 556 (2d Cir. 1949)......................................................................................20

*Lalima v. Consol. Edison Co. of N.Y.*,
   58 N.Y.S.3d 66 (2d App. Div. 2017) ........................................................................21

*In re Lead Paint Litig.*,
   191 N.J. 405 (2007) ..................................................................................................18

*Leo v. Gen. Elec. Co.*,
   538 N.Y.S.2d 844 (2d App. Div. 1989) .............................................................14, 16

*Litras v. PVM Int'l Corp.*,
   No. 11-cv-5695, 2013 WL 4118482 (E.D.N.Y. Aug. 15, 2013) .............................22

*Mendoza v. Perez*,
   754 F.3d 1002 (D.C. Cir. 2014) ..................................................................................7

*Miranda v. Bomel Constr. Co.*,
   187 Cal. App. 4th 1326 (2010) .................................................................................19

*Monaghan v. Roman Catholic Dioceses of Rockville Ctr.*,
   85 N.Y.S.3d 475 (2d App. Div. 2018)........................................................................17

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010)...................................................................................................24

*Montauk Oil Transp. Corp. v. Tug El Zorro Grande*,
   54 F.3d 111 (2d Cir. 1995).........................................................................................20

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010).......................................................................................25

*Noreen v. William Vogel & Bros.*,
  231 N.Y. 317 (1921) ................................................................20

*Peterson v. Silverado Senior Living, Inc.*,
  790 F. App'x 614 (5th Cir. 2019) ...........................................12

*Phillips v. Max Finkelstein, Inc.*,
  115 N.Y.S.3d 866 (N.Y. Cty. Ct. 2019)...................................25

*Poppo v. Aon Risk Servs. Co. of N.Y.*,
  No. 00-cv-4165, 2001 WL 392543 (S.D.N.Y. Apr. 17, 2001) .............................24

*Raritan Dev. Corp. v. Silva*,
  91 N.Y.2d 98 (1997) ...............................................................23

*Ret. Sys. v. Dole Food Co.*,
  969 F.2d 1430 (2d Cir. 1992)......................................................8

*Rincon v. Covidien*,
  No. 16-CV-10033, 2017 WL 2242969 (S.D.N.Y. May 22, 2017) ....................................12, 13

*Rios v. Metro. Transp. Auth.*,
  No. 13206-03, 2004 WL 3093154
  (N.Y. Sup. Ct. Richmond Cty. Dec. 22, 2004) ........................7

*Rocha v. GRT Constr. of N.Y.*,
  44 N.Y.S.3d 149 (2d. App. Div. 2016)......................................11

*Rural Cmty. Workers All. v. Smithfield Foods, Inc.*,
  No. 20-CV-6063, 2020 WL 2145350 (W.D. Mo. May 5, 2020)...............................3, 6, 9, 17

*SeaWorld of Fla., LLC v. Perez*,
  748 F.3d 1202 (D.C. Cir. 2014) ................................................4

*Secretary v. Wal-Mart Stores, Inc.*,
  No. 09-1013, 2011 WL 12678760 (O.S.H.R.C. Apr. 5, 2011)................................4

*Shain v. Ellison*,
  356 F.3d 211 (2d Cir. 2004)........................................................9

*Shanahan v. Monarch Eng'g Co.*,
  219 N.Y. 469 (1916) ...........................................................19, 21

*Sosnowy v. A. Perri Farms, Inc.*,
  764 F. Supp. 2d 457 (E.D.N.Y. 2011) .....................................23

*South Bay United Pentecostal Church v. Newsom*,
  140 S. Ct. 1613 (2020)..............................................................6

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
 761 N.Y.S.2d 192 (1st App. Div. 2003) ........................................................18

*Tierney v. Capricorn Inv'rs, L.P.*,
 592 N.Y.S.2d 700 (1st App. Div. 1993) ......................................................25

*Truelove v. Ne. Capital & Advisory, Inc.*,
 95 N.Y.2d 220 (2000) ...................................................................................24

*UCP-Bayview Nursing Home v. Novello*,
 2 A.D.3d 643 (2d App. Div. 2003) ................................................................7

*United States v. Santiago*,
 No. 92-cr-463, 2020 WL 2475068 (E.D.N.Y. May 13, 2020)......................13

*United States v. Wragg*,
 No. 15-cr-398, 2020 WL 4015204 (E.D. Pa. July 16, 2020) .........................7

*Vega v. CM & Assocs. Constr. Mgmt., LLC*,
 107 N.Y.S.3d 286 (1st App. Div. 2019) ......................................................25

*Warth v. Seldin*,
 422 U.S. 490 (1975)........................................................................................9

*WMATA v. Johnson*,
 467 U.S. 925 (1984)......................................................................................19

*Yurman v. Printex Packaging Corp.*,
 No. 06-cv-4906, 2008 WL 11417672 (E.D.N.Y. Sept. 22, 2008) ...............24

**Statutes**

5 U.S.C. § 553................................................................................................................6

29 U.S.C. § 653(b)(4) ..................................................................................................11

29 U.S.C. § 654(a)(1)................................................................................................4, 11

29 U.S.C. § 657(f).........................................................................................................6

29 U.S.C. §§ 660–661 ..................................................................................................5

29 U.S.C. § 667(a)–(b)................................................................................................10

29 U.S.C. § 667(b) ......................................................................................................10

Laws of New York, 1914 vol. I 216 ............................................................................21

Laws of New York, 1916 vol. III 2035........................................................................21

N.Y. A.P.A. Law § 102(2)(b)(iv) ..................................................................7

N.Y. A.P.A. Law § 202 ................................................................................6

N.Y. Lab. Law § 27-a ................................................................................10

N.Y. Lab. Law § 190 .................................................................................22

N.Y. Lab. Law § 190(1) ...............................................................................2

N.Y. Lab. Law § 198-c .........................................................................22, 24

N.Y. Workers' Comp. Law § 11 ..................................................................19

**Other Authorities**

N.Y. Dep't of Health, *Interim Guidance for the Wholesale Trade Sector During the COVID-19 Public Health Emergency* ....................................................7

N.Y. Dep't of Labor, *Request for Opinion, Personal/Sick/Vacation Policy* (Mar. 11, 2010) ........................................................................................23

New York State, *New York Paid Family Leave COVID-19: Frequently Asked Questions* ................................................................................................23

New York State Plan, OSHA ......................................................................10

NYC Health, *COVID 19: Data* (last visited Aug. 10, 2020) ........................12

OSHA*, COVID-19 Publications* ..................................................................5

OSHA, *Guidance on Preparing Workplaces for COVID-19* ..........................7

**Treatises**

Black's Law Dictionary (2d ed. 1910) ..........................................................20

Restatement (Second) of Torts § 821C(1) ....................................................15

**Regulations**

29 C.F.R. § 1903.12 ....................................................................................6

29 C.F.R. § 1910.132 ...............................................................................4, 18

29 C.F.R. § 1910.134 ...............................................................................4, 10

29 C.F.R. § 1910.141 ...............................................................................4, 10

*Respiratory Protection Final Rule*, 63 Fed. Reg. 1152 (Jan. 8, 1998) ..........................................10

## INTRODUCTION

Plaintiffs' Amended Complaint asks this Court to wade deeply into the rapidly changing standards of COVID-19 workplace safety, enforce non-binding agency guidance as if it were law, and manage the day-to-day operations and Human Resources practices of Amazon's JFK8 facility. In an attempt to exploit a global pandemic to further a broader agenda, Plaintiffs would have this Court mandate, for example, that Amazon communicate the suspension of its productivity requirements in writing (rather than verbally), and give employees "immediate access" to 48 hours of paid time off, "even if they have not yet accrued all 48 hours."   Am. Compl. ¶ 362(c)(ii), (c)(viii).  Because the Amended Complaint is jurisdictionally infirm and fails to state any viable claim, this Court should decline Plaintiffs' invitation to become an arbiter of workplace-safety standards during the pandemic and should dismiss the Amended Complaint with prejudice.

As a threshold matter, this Court is not the proper forum in which to resolve workplace-safety matters in the first instance.  It is the U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA") that has the special expertise, competence, and authority to resolve whether, for example, Amazon "sufficiently" staggers breaks to promote social distancing and provides employees with "adequate" time and supplies to clean and sanitize their own workstations.  Am. Compl. ¶ 326.  This Court should reject Plaintiffs' attempt to circumvent OSHA's jurisdiction, and instead should defer to that agency under the primary-jurisdiction doctrine.  Indeed, OSHA recently urged another federal court to "decline Plaintiffs' extraordinary invitation to use judicial intervention to highjack the Secretary's enforcement discretion and priorities and second-guess OSHA's judgment as it relates to occupational health and safety conditions."  Dep't of Labor Br. 10, *Does v. Scalia*, No. 3:20-cv-1260, ECF No. 24 (M.D. Pa. July 28, 2020) (attached as Ex. A).  Moreover, Plaintiffs' Amended Complaint itself demonstrates

that their claims for injunctive relief are moot, and that they lack standing to pursue many of them.

Plaintiffs' Section 200 claim fails for two additional reasons.  First, the claim is preempted by the Occupational Safety and Health ("OSH") Act.  Second, Plaintiffs fail to plausibly allege that Amazon's workplace practices somehow uniquely create a risk of contracting COVID-19.  Instead, Plaintiffs catalog a variety of safety measures taken by Amazon, while at the same time identifying risks of exposure outside of work, including their use of sometimes congested New York City public transportation.  Plaintiffs' allegations fail to plausibly connect Amazon's policies to any undue risk of contracting COVID-19 or to rule out Plaintiffs' own outside-of-work conduct as equally plausible causes of any risk of infection, as required to survive a motion to dismiss.

Plaintiffs' public-nuisance claim is similarly deficient.  Plaintiffs fail to allege harm different in kind, as opposed to degree, necessary for private plaintiffs to usurp the government's role and pursue a public-nuisance claim.  And Plaintiffs do not identify any authority supporting the novel and unsupportable proposition that employment practices at a private facility could ever constitute a public nuisance.  Additionally, given the extent of the outbreak in New York, Plaintiffs cannot plausibly allege that Amazon's policies cause the *public's* risk of exposure to the disease.

Finally, Plaintiffs have added two new putative class claims under Labor Law Section 191, seeking damages and injunctive relief for alleged failures to timely pay for quarantine leave.  But New York law exempts benefits like these from Section 191 by excluding them from the statutory definition of "wages."  *See* N.Y. Lab. Law § 190(1).  And Article III precludes Plaintiffs from seeking an injunction based on the speculative possibility that they might at some point qualify (initially, or again) for quarantine leave.  Nor do Plaintiffs plead other basic facts necessary to support these claims, such as whether they have a contractual, as opposed to statutory, entitlement to quarantine-leave benefits, or whether they were subject to a quarantine order and thus entitled

to benefits in the first place.

The Court should dismiss the Amended Complaint with prejudice.  *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (plaintiffs "already had one opportunity to amend their complaint" and it was "unlikely that the deficiencies raised . . . were unforeseen by plaintiffs when they amended").

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court generally "must accept as true all of the allegations contained in a complaint," but that rule is "inapplicable to legal conclusions."  *Id*. at 678.

## ARGUMENT

**I.   The Court Should Dismiss Plaintiffs' Section 200 And Public-Nuisance Claims Because OSHA Has Primary Jurisdiction Over Workplace Safety.**

**a.**  This Court should decline to take up Plaintiffs' Section 200 and public-nuisance claims because of the primary-jurisdiction doctrine.  *See Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, No. 20-CV-6063, 2020 WL 2145350 (W.D. Mo. May 5, 2020) (dismissing similar claims under the primary-jurisdiction doctrine).  Plaintiffs challenge Amazon's workplace response to the COVID-19 pandemic, but the evaluation of employers' workplace-safety policies is delegated in the first instance to OSHA—the expert federal agency with authority and expertise in workplace safety.  As a California court recently concluded in denying emergency relief in a similar suit seeking an injunction against Amazon, "the preferable approach here is for the Court to defer to [the California OSHA and other agencies'] expertise and authority."  *Brent v. AmazonFresh LLC*, No. CGC-20-584828, at 9, 12 (Cal. Super. Ct. July 27, 2020) (attached as Ex. B).  In the same way, this Court should defer to OSHA.

The primary-jurisdiction doctrine seeks to "promot[e] proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (citation omitted). "Recourse to the doctrine of primary jurisdiction is thus appropriate whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.* To determine whether the doctrine applies, courts consider four factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Id.* at 82–83. Here, the test weighs strongly in favor of deferring to OSHA's primary jurisdiction.

*First*, this lawsuit "involve[s] technical or policy considerations within [OSHA's] field of expertise." *Id.* at 83. OSHA has a "strategy for combatting the danger of COVID-19 in the workplace" that involves enforcing "existing rules and statutory requirements" and "rapid, flexible guidance." ECF No. 36-1 (Dep't of Labor Br. 1, *In re AFL-CIO*, No. 20-1158 (D.C. Cir. May 29, 2020) ("DOL Br.")). OSHA already "impose[s] enforceable obligations on employers to protect workers from COVID-19" involving "respiratory protection, personal protective equipment [("PPE")], and sanitation." *Id.* at 21; *see also* 29 C.F.R. § 1910.132 (PPE); *id.* § 1910.134 (airborne contaminants); *id.* § 1910.141 (sanitation). And OSHA has stated that the OSH Act's General Duty Clause, 29 U.S.C. § 654(a)(1), applies to "employers who fail to take preventative measures against COVID-19." DOL Br. 25.[1] In fact, Plaintiffs' attorneys conceded in a separate

---

[1] OSHA historically has applied the General Duty Clause to rapidly evolving workplace-safety situations. *See, e.g.*, *SeaWorld of Fla., LLC v. Perez*, 748 F.3d 1202, 1209 (D.C. Cir. 2014) (denying petition for review of OSHA's finding that SeaWorld violated Clause by allowing trainers to work in close contact with whales); *Secretary v. Wal-Mart Stores, Inc.*, No. 09-1013, 2011 WL 12678760, at *30 (O.S.H.R.C. Apr. 5, 2011) (Wal-Mart's "Black Friday" practices violated Clause).

suit that "OSHA has expressly stated its authority under the 'general duty' clause allows it to protect workers from workplace conditions that may contribute to the spread of COVID-19." Compl. ¶ 65, *Does v. Scalia*, No. 3:20-cv-01260, ECF No. 1 (M.D. Pa. July 22, 2020).

Contrary to Plaintiffs' suggestions, OSHA has actively responded to the COVID-19 crisis, conducting thousands of investigations into COVID-19-related complaints and initiating hundreds of workplace inspections. *See* DOL Br. 17. And "OSHA has developed a broad collection of guidance materials" involving COVID-19. *Id.* at 5; *see also* OSHA, *COVID-19 Publications*, https://tinyurl.com/wxa7z2p. OSHA's enforcement actions are subject to review by the Occupational Safety and Health Review Commission ("OSHRC")—a specialized body composed of administrative law judges and appellate commissioners with workplace-safety expertise. OSHRC's decisions are reviewable by federal courts of appeals. *See* 29 U.S.C. §§ 660–661.

*Second*, given OSHA's special expertise over workplace safety, questions regarding the adequacy of COVID-19-related workplace practices are committed to OSHA's discretion rather than the judgment of courts. *Ellis*, 443 F.3d at 83. The D.C. Circuit's recent order denying a labor union's petition to force OSHA to issue an emergency COVID-19 standard confirms OSHA's broad discretion. The court made clear that OSHA is entitled to "considerable deference" because it has "regulatory tools . . . at its disposal to ensure that employers are maintaining hazard-free work environments." *In re AFL-CIO*, No. 20-1158, 2020 WL 3125324, at *1 (D.C. Cir. June 11, 2020) (per curiam). OSHA has determined that COVID-19-related "questions should be resolved by scientific discovery and political consensus, not by litigation," and has concluded that "tailored guidance and enforcement of the general duty clause and existing standards, plus robust legal protections for complaints, is the best approach for protecting workers at this time." DOL Br. 3, 34. These considerations are only amplified where court intervention would usurp the elected

branches' authority.  *See South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1614 (2020) (Roberts, C.J., concurring) (officials making pandemic-related decisions "should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people").

*Third*, "deference to OSHA" here would "ensure uniform[ity]," which is particularly crucial in the context of an unprecedented pandemic.  *Smithfield*, 2020 WL 2145350, at *8.  If individual courts were to invade the province of OSHA by imposing their own workplace-safety standards, the nation's employers would quickly become subject to an inconsistent patchwork of court-mandated rules—rather than a uniform, standardized approach to combat the pandemic.

*Fourth*, Plaintiffs have not applied for relief from OSHA, and they should not be permitted to frustrate OSHA's primary jurisdiction simply by choosing not to exhaust the agency's authority and process.  Nothing precludes Plaintiffs even now from requesting that OSHA inspect JFK8 under 29 U.S.C. § 657(f), or from challenging any determination by OSHA in an administrative proceeding, *see* 29 C.F.R. § 1903.12.  Courts thus have recognized that this fourth factor alone "is not dispositive," *Bernhardt v. Pfizer, Inc.*, No. 1:00-cv-4042, 2000 WL 1738645, at *3 (S.D.N.Y. Nov. 22, 2000), or else plaintiffs could simply short-circuit the administrative process by ignoring it and preemptively filing suit—as Plaintiffs here have attempted to do.

**b.**  Relatedly, the Court should not allow Plaintiffs to circumvent the policy judgments of OSHA by converting federal agency guidance (as incorporated by the New York Forward guidance) into legally binding requirements, enforceable by private rights of action.  *See* Am. Compl. ¶¶ 325–26, 338.  This would violate the Due Process Clause's guarantee of fair notice, *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012), and the related requirements of the federal and state administrative procedure acts, *see* 5 U.S.C. § 553; N.Y. A.P.A. Law § 202.

In New York, guidance documents are just that—they "have no legal effect but are merely explanatory."  N.Y. A.P.A. Law § 102(2)(b)(iv); *cf. UCP-Bayview Nursing Home v. Novello*, 2 A.D.3d 643, 645 (2d App. Div. 2003) (Department of Health's "explanatory statement" "has no legal effect standing alone").  To the extent that the New York Forward guidance incorporates *federal* guidance, the CDC's COVID-19 guidance documents are "not binding," *United States v. Wragg*, No. 15-cr-398, 2020 WL 4015204, at *8 n.12 (E.D. Pa. July 16, 2020), and OSHA's COVID-19 guidance, on its face, contains "recommendations [that] are advisory in nature" and "creates no new legal obligations," OSHA, *Guidance on Preparing Workplaces for COVID-19*, https://tinyurl.com/tqt5ead; *see also A.S.M. v. Warden, Stewart Cty. Detention Ctr.*, No. 7:20-cv-62, 2020 WL 2988307, at *9 (M.D. Ga. June 3, 2020) ("Abundant evidence exists that the CDC did not intend to bind facilities by its Guidance."); *Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 716 (D.C. Cir. 2015) ("Policy statements are binding on neither the public nor the agency."); *Mendoza v. Perez*, 754 F.3d 1002, 1021–25 (D.C. Cir. 2014) (invalidating agency guidance as "effect[ing] a substantive change in existing law or policy" without notice-and-comment rulemaking).[2]  The Court should not transform non-binding guidance into law.

---

[2] Moreover, many of Plaintiffs' allegations address issues that are not even included in the New York Forward guidance, including: (1) purported underpayments or delayed payments of quarantine-leave benefits, Am. Compl. ¶¶ 102–10, 163–213; (2) policies governing paid and unpaid time off, *id.* ¶¶ 111–125; (3) HR policies for processing leave requests, *id.* ¶¶ 126–62; (4) productivity policies, *id.* ¶¶ 214–64; (5) air conditioning, *id.* ¶¶ 271–76; and (6) methods for performing contact-tracing, *id.* ¶¶ 277–313.  To the limited extent that the New York Forward guidance addresses issues relevant to Plaintiffs' allegations, it generally provides non-binding recommendations. *Compare, e.g., id.* ¶ 326(a) (alleging that Amazon fails to "sufficiently stagger breaks"), *with* N.Y. Dep't of Health, *Interim Guidance for the Wholesale Trade Sector During the COVID-19 Public Health Emergency*, https://tinyurl.com/yb69p75y (employers "*should* stagger schedules" (emphasis added)).  Finally, the New York Forward guidance does not give rise to a private right of action in any event.  *See Rios v. Metro. Transp. Auth.*, No. 13206-03, 2004 WL 3093154, at *7 (N.Y. Sup. Ct. Richmond Cty. Dec. 22, 2004) (dismissing cause of action "predicated upon an alleged violation of an Executive Order" as "no authority has been cited which would support a private right of action predicated upon an employer's conduct that allegedly is inconsistent with the 'policy' outlined in the Governor's Executive Orders").

**II.     Plaintiffs' Requests For Injunctive Relief Are Moot And Plaintiffs Lack Standing To Seek Injunctive Relief With Respect To Amazon's Productivity Policies.**

Plaintiffs seek only injunctive relief for their Section 200 and public-nuisance claims, yet they concede that many of their requested injunctive mandates are now moot.  A case "becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992) (internal quotation marks and citation omitted).  Plaintiffs ask this Court, for example, to order Amazon to "refrain from counting handwashing and bathroom breaks against TOT requirements."  Am. Compl. ¶ 362(c)(iii).  But Plaintiffs acknowledge that in July, Amazon confirmed to employees at JFK8 that "time spent maintaining social distancing, handwashing, sanitizing workstations, and using the restroom would not be subject to feedback related to TOT."  *Id.* ¶ 221.  Similarly, Plaintiffs allege that Amazon's "rate policies discourage workers from leaving their workstations to wash their hands and from taking the time to wipe down their workstations."  *Id.* ¶ 245.  But they concede that Amazon stopped enforcing rate requirements in March and communicated as much to employees at least by July 13, 2020.  *Id.* ¶ 229–31.  Further, any claim challenging the effectiveness of Amazon's previous oral communication of these changes is moot in light of its notifications on the subject.  *See, e.g.*, *Dole Food Co.*, 969 F.2d at 1433 (case moot where defendant included information in proxy statement sought by plaintiff).

Plaintiffs acknowledge that Amazon's July communications were "one of the key steps that workers in this lawsuit have been requesting," and that in light of these communications, employees "know that, without fear of discipline, they can wash their hands, socially distance, and clean up after themselves."  ECF No. 60, at 1, 3.  By acknowledging that they can protect themselves from COVID-19 "without fear of discipline," Plaintiffs thus admit that there is no case or controversy with respect to core aspects of their public-nuisance and Section 200 claims.

In addition to their claims being moot, Plaintiffs lack standing to seek injunctive relief with respect to Amazon's productivity policies, as they cannot demonstrate that they have "sustained or [are] immediately in danger of sustaining some direct injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *see also Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (plaintiffs "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [they] . . . will be injured in the future" (internal quotation marks and citation omitted)). Plaintiffs' admission that Amazon has suspended its productivity policies and that employees know that fact, Am. Compl. ¶¶ 221, 229–30, precludes Plaintiffs from showing a threat of "real and immediate" harm. *Shain*, 356 F.3d at 215. And while Plaintiffs purport to seek relief on behalf of temporary and "newly onboarded" employees, Am. Compl. ¶¶ 258–61, 362(c)(ii), (iv), Plaintiffs fail to allege that they themselves fall into either category, barring them from asserting such claims. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").[3]

## III.   Plaintiffs Fail To State A Section 200 Claim.

Plaintiffs also fail to state a Section 200 claim because their claim is preempted by the OSH Act and because they do not plausibly allege that Amazon caused them any cognizable injuries.

---

[3] Plaintiffs also ask the Court to order Amazon to provide "adequate . . . tools" for sanitizing workstations and complain about the availability of hand-washing facilities. Am. Compl. ¶¶ 246–48, 362(c)(iv). But they admit that Amazon has provided employees with masks and gloves and installed additional hand-sanitizer stations. *Id.* ¶¶ 8, 247, 323. Plaintiffs' allegation that stocks of these materials are depleted at times is insufficient to sustain Plaintiffs' claims. Even accepting the allegation as true, Plaintiffs acknowledge that hand-washing can occur in bathrooms, *id.* ¶ 248, and thus the unparticularized allegation that supplies for hand-sanitizing stations "often run out," *id.* ¶ 247, cannot provide standing for injunctive relief with respect to supplies. Moreover, Plaintiffs have not alleged (a) that all stations run out at once, or (b) that the stations are not refilled once supplies run out. There is nothing exceptional about a particular station running out of supplies and then subsequently being refilled. *See Smithfield*, 2020 WL 2145350, at *10–11 (rejecting plaintiffs' claim that "Smithfield could do more to protect its workers" in light of plant's "significant measures").

### A.  The OSH Act Preempts Plaintiffs' Section 200 Claim.

Plaintiffs identify workplace practices that they contend render JFK8 unsafe and ask the Court to impose Plaintiffs' own preferred policies instead.  This attempted misuse of Section 200 to create and enforce new COVID-19 standards is preempted by the OSH Act.

The OSH Act preempts state laws relating to occupational safety or health where a federal standard governs.  *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 102 (1992) (plurality); 29 U.S.C. § 667(a)–(b).  A "state law requirement that directly, substantially, and specifically regulates occupational safety and health is an occupational safety and health standard within the meaning of the Act," and preemption analysis should consider a state law's "actual effect."  *Gade*, 505 U.S. at 105, 107.  Under the Act, states may "assume responsibility" for "occupational safety and health standards" only by submitting a plan to the Secretary of Labor.  29 U.S.C. § 667(b). New York has submitted a plan for *public sector* employees, but *not* for private employees.  *See* New York State Plan, OSHA, https://tinyurl.com/y7cghkox; N.Y. Lab. Law § 27-a.  Thus, the OSH Act preempts New York workplace-safety standards for private employers like Amazon.

While the OSH Act does not preempt all Section 200 claims, preemption applies here because Plaintiffs seek injunctive relief to impose their own preferred health and safety standards instead of those promulgated by OSHA.  Existing federal standards require employers to protect employees from atmospheric contaminants, including airborne biological diseases.  *See* 29 C.F.R. § 1910.134; *Respiratory Protection Final Rule*, 63 Fed. Reg. 1152, 1180 (Jan. 8, 1998).  Similarly, OSHA's sanitation standards require employers to provide potable water and a sufficient number of toilet and washing facilities, including running water and hand soap or similar cleaning agents. *See* 29 C.F.R. § 1910.141.  OSHA has made clear that these standards govern employers' operations in response to COVID-19.  DOL Br. 21–23.  Plaintiffs' requests for injunctive relief under New York law seek to supersede these federal standards and replace them with their own.

10

Even if Plaintiffs' requests were not at odds with specific existing OSHA standards, they would still be preempted by the OSH Act's "General Duty Clause," which requires employers to provide a safe workplace, including with respect to COVID-19.  29 U.S.C. § 654(a)(1); DOL Br. 21–24.  As deployed by Plaintiffs here, Section 200 would regulate the same subject matter as the General Duty Clause.  But the Secretary of Labor, not Plaintiffs, has the "sole responsibility" to enforce that Clause.  *Jacobsen v. N.Y.C. Health and Hosps. Corp.*, No. 12-cv-7460, 2013 WL 4565037, at *7 (S.D.N.Y. Aug. 28, 2013) (internal quotation marks omitted); *see also BHC Nw. Psychiatric Hosp., LLC v. Sec'y of Labor*, 951 F.3d 558, 560 (D.C. Cir. 2020) (noting that the General Duty Clause "requires every employer to provide a workplace free from recognized hazards that are causing or are likely to cause death or serious physical harm to its employees" (internal quotation marks omitted)).  Plaintiffs cannot displace these federal requirements—and usurp the Secretary's exclusive authority—by invoking Section 200.  *See Gade*, 505 U.S. at 102.[4]

### B. Plaintiffs Fail To Plausibly Allege That Amazon's Practices Caused Their Risk Of Exposure To COVID-19.

Plaintiffs' allegations that Amazon's practices proximately caused them damages (or risk of damages) due to COVID-19 also do not state a plausible Section 200 claim.  Plaintiffs "must demonstrate the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by the injured party."  *Becker v. Schwartz*, 46 N.Y.2d 401, 410 (1978).

---

[4] The OSH Act's savings clause, which excludes from preemption state laws providing compensation for "injuries, diseases, or death of employees" arising from or in the course of employment, 29 U.S.C. § 653(b)(4), cannot salvage Plaintiffs' claims.  Rather than pursuing compensation for "actual injury and death" through the workers' compensation scheme, *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 445 (1977), Plaintiffs seek to repackage nonbinding guidance into a Section 200 workplace-safety regime in an area governed by federal law.  This attempted use of Section 200 distinguishes Plaintiffs' claim from ordinary Section 200 suits, which, consistent with the OSH Act, seek tort damages for workplace injuries from property owners or contractors.  *See, e.g.*, *Rocha v. GRT Constr. of N.Y.*, 44 N.Y.S.3d 149, 151 (2d App. Div. 2016).

But "New York became the global epicenter of the pandemic" in March 2020.  Am. Compl. ¶ 56.

The claim that "dozens" of individuals employed at a facility have allegedly contracted COVID-

19 *somewhere* in the months since March 2020, *id.* ¶ 258, does not come close to stating a plausible

claim that JFK8, which has thousands of employees, *id.* ¶ 86, is failing to take reasonable steps to

protect employees in a city with over 224,000 confirmed cases, NYC Health, *COVID 19: Data*,

https://tinyurl.com/tp8uwld (last visited Aug. 11, 2020); *see also* Am. Compl. ¶ 56 ("Officials

estimate there are many more unconfirmed cases of the virus[.]").

Plaintiffs acknowledge that "many workers [at JFK8] take multiple forms of public transit

to get to work," Am. Compl. ¶ 95, which the original Complaint noted were overcrowded and

often filled "to capacity," Compl. ¶¶ 65–68.  And Plaintiffs admit that when not at work, they

"interact with their families and with other members of the public as they undertake their day-to-

day activities, like grocery shopping and using public transportation."  Am. Compl. ¶¶ 13, 327.  In

light of the significant risks of infection inherent in these activities, as well as living and working

in New York during the pandemic, any claim that Amazon's workplace practices unreasonably

increase Plaintiffs' risk of exposure to COVID-19 (let alone proximately caused anyone to become

infected with COVID-19) is entirely speculative.  *See Rincon v. Covidien*, No. 16-CV-10033, 2017

WL 2242969, at *1 (S.D.N.Y. May 22, 2017) (dismissing claim that surgical mesh caused

infection where complaint did not explain why "the mesh is a more likely, let alone proximate,

cause" compared to other potential causes); *Peterson v. Silverado Senior Living, Inc.*, 790 F. App'x

614, 617 (5th Cir. 2019) (dismissal of wrongful-death claim proper where allegations "insufficient

to support a plausible inference that [defendant's] actions were more likely than not the cause of

[decedent's] death"); *Ebaseh-Onofa v. McAllen Hosps., LP*, No. 13-14-319-CV, 2015 WL

2452701, at *7 (Tex. App. May 21, 2015) (where virus present in community, claim of nurse's

estate that she contracted it at hospital was speculative); *cf. United States v. Santiago*, No. 92-cr-463, 2020 WL 2475068, at *3 (E.D.N.Y. May 13, 2020) (Cogan, J.) ("New York City remains a hotbed for the spread of the virus, and thus living with [defendant's] sister does not necessarily materially decrease the probability of defendant contracting it."). These claims are all the more speculative in light of the undisputed difficulty of identifying the source of a COVID-19 infection.

Even if Plaintiffs could allege facts sufficient to create a plausible inference that they or any other employees contracted COVID-19 at JFK8 as opposed to elsewhere in their daily lives, the Amended Complaint lacks allegations sufficient to show that any infection was a result of Amazon's challenged practices. *See Rincon*, 2017 WL 2242969, at *1; *Castillo v. Amjack Leasing Corp.*, 924 N.Y.S.2d 156, 157 (2d App. Div. 2011) ("liability may not be imposed upon a party who merely furnishes the condition or occasion for the occurrence of the event but is not one of its causes"). The Amended Complaint fails to connect *any* of Amazon's alleged practices to Employee-Plaintiffs' injuries. For example, the Amended Complaint alleges that Benita Rouse was in "close contact" with an unspecified infected co-worker, Am. Compl. ¶¶ 129–30, but fails to explain how this contact resulted from any allegedly unsafe practices by Amazon. Nor do Plaintiffs explain how close or for how long she was "in contact" with the unspecified co-worker, or even whether they were wearing masks and gloves during their contact, thus further demonstrating Plaintiffs' failure to sufficiently plead causation. Similarly, the Amended Complaint alleges that Barbara Chandler was infected by unidentified "workers who were explicitly or implicitly encouraged to continue attending work and prevented from adequately washing their hands or sanitizing their workstations." *Id.* ¶ 4. But the Amended Complaint lacks a single concrete and non-speculative allegation providing "further factual enhancement" in support of this "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

13

678.  Likewise, the Amended Complaint alleges only that Deasahni Bernard "began experiencing symptoms of COVID-19 at work" and "believed she had contracted the virus at work after being in close contact with co-workers who had COVID-19."  *Id.* ¶¶ 146, 304.  The Amended Complaint lacks any factual allegations to support Bernard's speculative "belief" and fails to tie it to any particular challenged workplace practice.  In sum, Plaintiffs' allegations "stop[] short of the line between possibility and plausibility" of showing that Amazon failed to take reasonable measures to protect employees from COVID-19.  *Twombly*, 550 U.S. at 557.

## IV.   Plaintiffs Fail To State A Public-Nuisance Claim.

Plaintiffs have also failed to state a plausible public-nuisance claim.  Plaintiffs do not allege any unique injury that would allow them to bring a claim that normally belongs only to the government.  Nor does public-nuisance law extend to employment practices at a private facility.  And even if it did, Plaintiffs fail to plausibly allege that Amazon's challenged practices are the actual or proximate cause of the public's risk of exposure.[5]

### A.  Plaintiffs Cannot Bring A Private Action For Public Nuisance.

Plaintiffs fail to allege facts showing that this is the rare case where a private plaintiff can usurp the government's authority to bring a public-nuisance action.  "A public nuisance is a violation against the State and is subject to abatement or prosecution by the proper governmental authority."  *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 292 (2001).  "[I]nvasions of rights common to all of the public should be left to be remedied by action by public officials."  *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 334 (1983); *see also Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y., LLC*, 405 F. Supp. 3d 408, 443 (W.D.N.Y. 2019); *Leo v. Gen. Elec. Co.*, 538 N.Y.S.2d 844, 846 (2d App. Div. 1989).  The

---

[5] For the same reasons that the OSH Act preempts Employee-Plaintiffs' Section 200 claim, *see supra* at 10–11, it also preempts their public-nuisance claim.

sole exception is where a plaintiff "suffered harm of a kind different from that suffered by other members of the public."  Restatement (Second) of Torts § 821C(1).  But that injury must be "different in kind," not "merely in degree, to that which may be suffered by the public as a whole." *Duffy v. Baldwin*, 124 N.Y.S.3d 110, 114 (3d App. Div. 2020).

Plaintiffs cannot show any special injury that is *different in kind, not merely in degree* from that borne by the public.  The COVID-19 crisis has had a devastating impact on New Yorkers. Am. Compl. ¶¶ 48, 56.  Plaintiffs allege a risk of exposure to COVID-19 through "community spread," *id*. ¶ 325, which by definition is a risk to the entire community.  Despite such admissions, Employee-Plaintiffs assert that their risk is different because they face "direct exposure" at JFK8, and because they fear "infecting a family member."  *Id.* ¶¶ 331–32.  But the Amended Complaint fails to plausibly allege that Plaintiffs' risk of exposure (or fear of infecting family members) is meaningfully different for employees at JFK8 than for other essential workers in New York City. *See supra* at 11–14.  And even if Plaintiffs could show that they are at greater risk or suffer more anxiety than the general public, those are differences in degree, not in kind, and therefore are insufficient to establish a unique injury.  *See 532 Madison Ave.*, 96 N.Y.2d at 293–94.

The alleged injury to Family-Member Plaintiffs is even harder to distinguish from the alleged harm to the public at large.  Family-Member Plaintiffs allege that they "are at risk inside their own homes," Am. Compl. ¶ 334, because JFK8 employees might bring the virus home.  But that is the same kind of risk that every New Yorker faces when a family member or roommate interacts with those in the community, either by going to work, shopping at a grocery store, or having a service technician or other person visit their home.  If there is any difference at all, it is again one of degree, not kind.  *See 532 Madison Ave.*, 96 N.Y.2d at 293–94.

Nor is there any limiting principle to Plaintiffs' far-reaching interpretation of the "special

injury" exception.  Under Plaintiffs' theory, everyone who lives in the same apartment building as a JFK8 employee, who enters a JFK8 employee's home, or who shares a home with someone who comes in contact with a JFK8 employee—say, on the bus or the ferry, Am. Compl. ¶ 95—would have a private action for public nuisance.  And this could be repeated for every private employer across New York that a plaintiff alleges is not doing enough to prevent the spread of COVID-19.

The special-injury requirement ensures that in the ordinary case, "the proper governmental authority" remains responsible for "abatement or prosecution" of an alleged nuisance that impacts the public at large.  *See 532 Madison Ave.*, 96 N.Y.2d at 292.  The New York Attorney General is mistaken to characterize Amazon as arguing categorically "that there is no private right of action for public nuisance" claims.  ECF No. 49, at 1 n.1.  In fact, the case on which the Attorney General relies makes Amazon's point: a private plaintiff may bring a public nuisance claim, but *only* when her harm is "peculiar or special."  *Leo*, 538 N.Y.S.2d at 846–47.  Further, nothing in New York public-nuisance law permits the Court to waive the special-injury requirement if the government has "limited enforcement resources."  *See* ECF No. 49, at 1 n.1.  And that argument is also factually flawed: the Attorney General leads an office with more than 700 lawyers, and her brief admits that "the OAG is currently investigating multiple employers, including [Amazon], regarding their workplace policies and practices during the COVID-19 pandemic."  *Id.* at 2.  The Attorney General even entered a common-interest agreement with Plaintiffs' counsel on May 27, 2020, before this case was filed, agreeing to "share information" in pursuit of their "common objectives."  Ex. C, at 1 (provided to Amazon's counsel by the Attorney General).  The Attorney General's purported lack of resources provides no legal basis to allow Plaintiffs to bring a cause of action that, except

in the extraordinary case of special injury not present here, belongs to the government alone.[6]

### B.  Plaintiffs Do Not Allege Interference With Any Public Right.

In any event, public-nuisance law does not extend to a dispute about employment practices at a private facility.  "A public nuisance exists for conduct that amounts to a substantial interference with the exercise of a common right of the public, thereby offending public morals, interfering with the use by the public of a public place or endangering or injuring the property, health, safety or comfort of a considerable number of persons."  *532 Madison Ave.*, 96 N.Y.2d at 292.

"To constitute a public nuisance, the offending party's actions must damage or infringe upon the exercise of rights common to all people, such as interfering with the public's right to use a public place."  *Haire v. Bonelli*, 870 N.Y.S.2d 591, 595 (3d App. Div. 2008).  Here, Plaintiffs challenge the working conditions at JFK8, which "is private property."  *Monaghan v. Roman Catholic Dioceses of Rockville Ctr.*, 85 N.Y.S.3d 475, 478 (2d App. Div. 2018).  The terms of employment for a discrete group of employees at one private facility are not "common to all people."  *See Haire*, 870 N.Y.S.2d at 595.  And the risk that employees will contract COVID-19 "during a global pandemic" is insufficient by itself to make JFK8, or any other essential business, a "public nuisance."  *Smithfield*, 2020 WL 2145350, at *11.  Similarly, allegations that an employer "could do more to protect its workers" from COVID-19 are insufficient to state a claim.  *See id.*; *accord* Ex. B, at 8 ("[P]erfection is not the standard.").

As with their proposed waiver of the special-injury requirement, Plaintiffs offer no limiting principle for this further proposed expansion of public-nuisance law.  Plaintiffs' theory would

---

[6] As early as June 5, 2020, Amazon had inquired with the Attorney General about the existence of any such common-interest agreements, but the Attorney General did not inform Amazon about the May 27 common-interest agreement until nearly two months later on July 23.  Amazon immediately expressed concern about the propriety of the agreement and also urged the Attorney General to inform this Court about its existence given the obvious relevance of the agreement to the Attorney General's status as an amicus.

embroil courts in workplace-practice disputes whenever a plaintiff alleges that a defendant could have done more to prevent the spread of disease and that the conduct constitutes a "public nuisance" by increasing by some immeasurable margin the risk of disease transmission.  Under Plaintiffs' theory, for example, an apartment resident could sue her neighbor for taking too many trips outside, a shopper could sue his grocery store because he saw the store's employees failing to socially distance or wear proper PPE, and an employee could sue his co-workers for attending large public gatherings on their days off.

For good reason, courts in New York and elsewhere have cautioned against claims like these:  Expansive public-nuisance theories would "open the courthouse doors to a flood of limitless, similar theories" in cases brought "against a wide and varied array of . . . commercial and manufacturing enterprises and activities."  *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 196 (1st App. Div. 2003).  Allowing claims like Plaintiffs' to proceed "would stretch the concept of public nuisance far beyond recognition and would create a new and entirely unbounded tort."  *In re Lead Paint Litig.*, 191 N.J. 405, 421 (2007).

In short, Plaintiffs have paid this Court "an extravagant compliment in asking it to supersede the legislative and administrative regulation in this critical area."  *Diamond v. Gen. Motors Corp.*, 20 Cal. App. 3d 374, 383 (1971).  But the Court would "show[] the greater wisdom in declining the tender."  *Id.*  "[T]he plain fact [is] that courts are the least suited, least equipped, and thus the least appropriate branch of government to regulate and micro-manage" the response to a pandemic.  *Sturm, Ruger & Co.*, 761 N.Y.S.2d at 199.

## C.  Plaintiffs Do Not Plausibly Allege Actual Or Proximate Cause.

Plaintiffs also cannot plausibly allege that Amazon actually or proximately caused their risk of exposure to COVID-19 or community spread in New York—as would be necessary to state a viable public-nuisance claim.  *See Sturm, Ruger & Co.*, 761 N.Y.S.2d at 202 (granting motion to

dismiss because "at some point, a party is simply too far removed from the nuisance to be held responsible for it"). As explained above, the Amended Complaint lacks allegations sufficient to state a plausible claim that working at JFK8 (much less the specific policies about which Plaintiffs complain)—as opposed to engaging in any other activities—actually or proximately caused their risk of exposure, let alone the risk of exposure for everyone in New York. *See supra* at 11–14; *Miranda v. Bomel Constr. Co.*, 187 Cal. App. 4th 1326, 1336–37 (2010) (plaintiffs could not establish that defendant caused their exposure to fungal spores that cause "Valley Fever," where the spores were "endemic to a large portion of California"). Plaintiffs admit that JFK8 employees expose themselves to the risk of contracting COVID-19 in limitless other ways, such as by taking "multiple forms of public transit," Am. Compl. ¶ 95, and "interact[ing] with their families and with other members of the public as they undertake their day-to-day activities, like grocery shopping and using public transportation," *id*. ¶ 327. Given the risk of exposure inherent in these activities—and the difficulty of tracing such sources of exposure—Plaintiffs have not adequately pled why Amazon's practices at JFK8 proximately cause an enhanced risk of infection. *See Iqbal*, 556 U.S. at 681–82 (taking into account "more likely [alternative] explanations" or "'obvious alternative explanation[s]'" when reversing denial of motion to dismiss). Plaintiffs thus "have not nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**V.    The Court Should Dismiss Employee-Plaintiffs' Public-Nuisance And Section 200 Claims Because They Are Barred By New York's Workers' Compensation Statute.**

New York's Workers' Compensation statute provides that an employer's obligation to pay workers' compensation "shall be exclusive" and "in place of any other liability whatsoever" to an employee. N.Y. Workers' Comp. Law § 11. This statute reflects a "quid pro quo," *WMATA v. Johnson*, 467 U.S. 925, 931 (1984), in which "both classes, employer and employee, gained benefits and made concessions," *Shanahan v. Monarch Eng'g Co.*, 219 N.Y. 469, 478 (1916).

Workers received guaranteed compensation for workplace injury in Section 10 of the statute, and, in exchange, Section 11 granted employers the benefit of immunity from workplace-injury suits, which includes the "avoidance of litigation." *Noreen v. William Vogel & Bros.*, 231 N.Y. 317, 321 (1921). Because putting employers back on the hook through mandatory injunctive orders would foil that bargain, Employee-Plaintiffs' workplace-injury claims should be dismissed.

Courts routinely dismiss workplace-safety claims because Section 200 "is subject to the exclusivity provisions of the Workers' Compensation Law." *Bardere v. Zafir*, 477 N.Y.S.2d 131, 133 (1st App. Div. 1984), *aff'd*, 63 N.Y.2d 850 (1984). And the "clear mandate of § 11" applies to "a private action for public nuisance" because Section 11 broadly encompasses "any accidental injury arising out of and in the course of employment, including diseases or infections." *Acevedo v. Consol. Edison Co. of N.Y.*, 596 N.Y.S.2d 68, 70–71 (1st App. Div. 1993).

Plaintiffs cannot avoid the statute by seeking injunctive relief instead of damages. Section 11 bars workplace-injury claims seeking to impose "any other liability whatsoever." The term "liability" is "of the most comprehensive significance." *Montauk Oil Transp. Corp. v. Tug El Zorro Grande*, 54 F.3d 111, 114 (2d Cir. 1995). That was true in 1914 and 1916, when the term "liable" meant to be bound in law "or equity." Black's Law Dictionary (2d ed. 1910). The term "liability" thus means more than "a mere duty to pay damages." *Krenger v. Pa. R. Co.*, 174 F.2d 556, 559 (2d Cir. 1949); *see also Hartnett v. N.Y.C. Transit Auth.*, 86 N.Y.2d 438, 444 (1995) ("'[L]iability,' as a legal term, has an appreciably broader meaning than pecuniary obligations," and "courts have rejected the proposition that 'liability' means money damages only."). Rather, "liability" is the "opposite of immunity." *Krenger*, 174 F.2d at 559. Persons who cannot be held liable, therefore, are immune from suit.

By making an employer's Section 10 obligations "exclusive and in place of any other

20

liability whatsoever," Laws of New York, 1914 vol. I 216, Section 11 ensures that "no suit against an employer may be maintained" for workplace injury.  *Burlew v. Am. Mut. Ins.*, 63 N.Y.2d 412, 416 (1984).  The statute "covers the *entire field of remedy* against an employer for industrial accident." *In re Babb*, 264 N.Y. 357, 361 (1934) (emphasis added); *see also Shanahan*, 219 N.Y. at 476 (Section 11 "clearly provides" that compensation "shall be exclusive of *all other rights and remedies*" (emphasis added)).  And in the century since, New York courts have consistently reiterated that compensation under the statute is the "exclusive remedy" for workplace injury.  *E.g.*, *Lalima v. Consol. Edison Co. of N.Y.*, 58 N.Y.S.3d 66, 67 (2d App. Div. 2017).

Other textual provisions confirm this understanding of Section 11's scope.  Section 11's title—"Alternative Remedy"—means that *all remedies* for workplace injury—other than Section 10 compensation—are barred, not merely alternative forms of compensation.  And the switch from the term "compensation" in Section 10 to the broader terms "remedy" and "liability" in Section 11 indicates the same.  The statute's drafters could have barred "any other compensation whatsoever," and their decision not to do so must be presumed meaningful.  *See, e.g.*, *DHS v. MacLean*, 574 U.S. 383, 391 (2015) (legislatures "generally act[] intentionally when [they use] particular language in one section of a statute but omit[] it in another").  Section 11's bar on "any other *liability* whatsoever" thus requires dismissal of Employee-Plaintiffs' workplace-injury claims.[7]

## VI.   The Court Should Dismiss Plaintiffs' Putative Class Claims For Unpaid Or Untimely Paid Wages Under Section 191.

Plaintiffs also bring purported class claims for alleged untimely, deficient quarantine-leave

---

[7] The statutory history also confirms Section 11's broad reach.  In 1916, New York adopted an amendment stating that the statutory compensation would be "'exclusive of *all other rights and remedies* for injuries to employees,'" *Shanahan*, 219 N.Y. at 473–74 (quoting amendment) (emphasis added), "and in place of any other liability whatsoever" to Section 11, Laws of New York, 1916 vol. III 2035.  This new language—added to a statute that already made compensation the "exclusive" remedy—"dictates a broad interpretation" of the term "liability."  *Greenberg v. Sutter*, 173 Misc. 2d 774, 776 (N.Y. Sup. Ct. 1997).

payments under New York's COVID-19 Leave Law, S. 8091.  Plaintiffs do not bring an action under the Leave Law itself, which does not permit a private right of action.  Instead, Plaintiffs attempt to shoehorn alleged Leave Law violations into N.Y. Lab. Law § 191, which governs the frequency and timing of payment of "wages."  These claims fail as a matter of law.

### A.   Quarantine Benefits And Supplemental Pay Are Not "Wages" Under Section 191.

Plaintiffs' Section 191 claim fails because quarantine-leave benefits and supplemental pay are not "wages" under New York law.  Section 190 defines "wages" as "the earnings of an employee *for labor or services rendered*, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis."  N.Y. Lab. Law § 190 (emphasis added).  Wages "include[ ] benefits or wage supplements as defined in section [198-c] of this article, *except for the purposes of* section[ ]" 191.  *Id.* (emphasis added).  Section 198-c, in turn, defines "benefits or wage supplements" as "includ[ing], but . . . not limited to, reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay."  *Id.* § 198.

Here, paid COVID-19 leave, which is a form of sick leave, is not "earnings of an employee for labor or services rendered."  N.Y. Lab. Law § 190.  Rather, it is a "benefit[] or wage supplement[]" and is therefore expressly exempt from Section 191.  Indeed, the title of the COVID-19 Leave Law is "AN ACT providing requirements for *sick leave* and the provision of certain *employee benefits* when such employee is subject to a mandatory or precautionary order of quarantine or isolation due to COVID-19."  S. 8091 (emphases added).  This Court has held that the New York Labor Law's definition of "benefits and wage supplements" extends to "vacation and sick pay."  *Crawford v. Coram Fire Dist.*, No. 12-cv-3850, 2015 WL 10044273, at *5 (E.D.N.Y. May 4, 2015) (citing *Litras v. PVM Int'l Corp.*, No. 11-cv-5695, 2013 WL 4118482, at *10 (E.D.N.Y. Aug. 15, 2013)).  Because "section 190 specifically except[s] 'benefits and wage supplements' from the definition of 'wages' for the purposes of section 191[ ]," Section 191 "does

not provide a statutory right to . . . vacation and sick day payments," including COVID-19 leave benefits.  *See Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 476 (E.D.N.Y. 2011).

This is also the view of New York's Department of Labor, which advised in a reasoned opinion letter that paid sick leave is a "*benefit*[] generally provided at the discretion of the employer, or based upon an employee contract or collective bargaining agreement."  N.Y. Dep't of Labor, *Request for Opinion, Personal/Sick/Vacation Policy* (Mar. 11, 2010), https://on.ny.gov/33pXXhh (emphasis added).  The New York Court of Appeals has "previously given weight to DOL's opinion letters when deciding whether to defer both to DOL's interpretation of its own regulations as well as the Labor Law."  *See Andryeyeva v. N.Y. Health Care, Inc.*, 33 N.Y.3d 152, 175 (2019).  To be sure, the Amended Complaint cites New York's "Frequently Asked Questions" website on "Paid Family Leave COVID-19," which asserts without any explanation that "[t]he paid sick leave payments are subject to the frequency of pay requirements of Section 191 of the Labor Law."  Am. Compl. ¶ 79 n.6 (citing New York State, *New York Paid Family Leave COVID-19: Frequently Asked Questions*, https://on.ny.gov/2VCCDQD).  But a statement on the questions page of a state website cannot trump the plain text of Section 191 or precedent interpreting it.  *See Raritan Dev. Corp. v. Silva*, 91 N.Y.2d 98, 100 (1997) ("[W]hen an interpretation is contrary to the plain meaning of the statutory language, we have typically declined to enforce an agency's conflicting application thereof."); *cf. Andryeyeva*, 33 N.Y.3d at 174–75 (agency interpretation given greater weight "[w]hen an agency adopts a construction which is then followed for 'a long period of time'").[8]

---

[8] Moreover, neither Chandler nor Bernard has adequately pled the requirements for eligibility under the Leave Law, which requires that an employee obtain "a mandatory or precautionary order of quarantine or isolation issued by the state of New York, the department of health, local board of health, or any governmental entity duly authorized to issue such order due to COVID-19."  S. 8091.  Neither Plaintiff has alleged that they ever sought or received such an order.

23

Likewise, the extra $2 per-hour that Amazon paid during the height of the pandemic is not "wages" under Section 191 because it is a "wage supplement." *See* N.Y. Lab. Law § 198-c. The New York Court of Appeals has held that the Labor Law's "definition of 'wages' . . . excludes incentive compensation 'based on factors falling outside the scope of the employee's actual work.'" *Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 224 (2000). Here, because Amazon instituted the $2 pay at its own discretion to reward employees for their essential work during the pandemic, it is akin to a "discretionary bonus [which] is not included in the definition of 'wages' under the New York Labor Law." *Yurman v. Printex Packaging Corp.*, No. 06-cv-4906, 2008 WL 11417672, at *3 (E.D.N.Y. Sept. 22, 2008) (quoting *Poppo v. Aon Risk Servs. Co. of N.Y.*, No. 00-cv-4165, 2001 WL 392543, at *2 (S.D.N.Y. Apr. 17, 2001)).

Thus, Plaintiffs' allegations that Amazon violated Section 191 by not timely paying quarantine pay or by failing to include in their quarantine-leave benefits an extra $2 per-hour in supplemental pay fail as a matter of law.

## B. Plaintiffs Lack Standing To Challenge Hypothetical Future Underpayments.

Plaintiffs' standalone claim seeking an injunction against future underpayments of quarantine benefits fails because Plaintiffs lack standing to seek an injunction against hypothetical future injuries. Plaintiffs must allege an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Here, Plaintiffs have not alleged any "actual" injury. Rather, Plaintiffs "are concerned that if they become eligible for COVID-19 paid leave, Defendants will fail to pay them their earned wages for COVID-19 paid leave on a timely basis." Am. Compl. ¶ 359. A party facing prospective injury must show that the threatened injury is "certainly impending, or there is substantial risk that the harm will occur" to constitute injury in fact. *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (internal

quotation marks omitted).  "[A]llegations of *possible* future injury are not sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears" or concerns "of hypothetical future harm."  *Id.* at 417.  Accordingly, the Court should dismiss Count IV for lack of standing.

### C.  Plaintiffs Cannot Bring A Section 191 Claim Based On A Purported Statutory Right, As Opposed To A Contractual Right.

Plaintiffs also cannot bring a claim under Section 191 unless they have an "enforceable contractual right to those wages."  *Tierney v. Capricorn Inv'rs, L.P.*, 592 N.Y.S.2d 700, 703 (1st App. Div. 1993).  The Second Circuit has recognized that "New York courts have suggested that plaintiffs may not use Labor Law § 191 to seek unpaid wages to which they claim to be entitled under a statute; rather § 191 guarantees only that the wages the employer and employee have 'agreed' upon be paid in a 'timely' manner . . . according to the 'terms of [the employee's] employment.'"  *Myers v. Hertz Corp.*, 624 F.3d 537, 545 n.1 (2d Cir. 2010) (citations omitted).[9]

Here, Plaintiffs' sole claim for entitlement to additional quarantine-leave payments is statutory.  They do not allege that Amazon breached any contractual obligation.  Thus, they have failed to allege one of the basic elements of a Section 191 claim, even setting aside their erroneous assumption that paid-quarantine-leave benefits are "wages" under New York Labor Law.

### CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

---

[9] Moreover, to the extent that Plaintiffs purport to bring a claim under Section 191 for *delayed*, but ultimately *paid*, quarantine pay, that claim fails because Section 191 provides a cause of action only when "there was nonpayment of wages."  *Phillips v. Max Finkelstein, Inc.*, 115 N.Y.S.3d 866, 869 (N.Y. Cty. Ct. 2019); *see also Hunter v. Planned Bldg. Servs., Inc.*, No. 715053/2017, 2018 WL 3392476, at *2 (N.Y. Sup. Ct. June 20, 2018); *Hussain v. Pakistan Int'l Airlines Corp.*, No. 11-cv-932, 2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012).  The First Department's recent decision reaching the opposite conclusion is an outlier from the majority of cases to consider the issue.  *See Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286 (1st App. Div. 2019).

Dated:  August 11, 2020

Respectfully submitted,

*/s/ Jason C. Schwartz*
Jason C. Schwartz*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
jschwartz@gibsondunn.com

Avi Weitzman
Zainab N. Ahmad
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
aweitzman@gibsondunn.com
zahmad@gibsondunn.com

Karl G. Nelson*
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100
knelson@gibsondunn.com

*Attorneys for Defendants Amazon.Com, Inc.
and Amazon.Com Services LLC*

* Admitted *pro hac vice*