## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DERRICK PALMER, KENDIA MESIDOR, BENITA ROUSE, ALEXANDER ROUSE, BARBARA CHANDLER, LUIS PELLOT-CHANDLER, and DEASAHNI BERNARD,<br><br>Plaintiffs<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES, LLC,<br><br>Defendants. | No. 1:20-cv-02468-BMC |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................1

    A.    The Court should not defer to OSHA under the primary
        jurisdiction doctrine ...........................................................................1

        1.    Plaintiffs' claims are not within the special
              competence of OSHA ............................................................1

        2.    OSHA has no jurisdiction over public health and
              safety issues governed by state law .....................................3

        3.    Amazon's arguments as to the Court's competence to
              decide this matter would apply to a wide swath of
              common law claims ...............................................................4

    B.    Plaintiffs state a NYLL § 200 claim ....................................................6

        1.    Plaintiffs' § 200 claim is not preempted by the OSH Act ....................6

        2.    Plaintiffs need not establish causation of an existing
              injury in order to seek injunctive relief under § 200.............................9

    C.    Plaintiffs state a claim for public nuisance ......................................11

        1.    Plaintiffs have sufficiently alleged interference with a
              public right ........................................................................11

        2.    Plaintiffs have sufficiently alleged special injury ...............................12

        3.    Plaintiffs have sufficiently alleged actual and
              proximate causation of the increased risk of exposure .........................14

    D.    Plaintiffs have standing to seek injunctive relief ..............................15

        1.    Plaintiffs challenge Amazon's post-July 13 practices
              because workers continue to be unaware of the modified
              productivity requirements ....................................................15

2.    Plaintiffs retain standing to challenge Amazon's pre-July
      13 practices because it is not "absolutely clear" that they
      will not recur .................................................................................16

3.    Plaintiffs have standing to ensure that newly hired
      workers are notified about the modified productivity
      requirements .....................................................................................17

E.    Workers' compensation exclusivity does not bar employee-plaintiffs'
      claims .........................................................................................................18

F.    Plaintiffs state a claim for failure to pay wages under NYLL § 191 ...............19

1.    Leave Law payments are wages subject to the provisions
      of New York Labor Law § 191 ..........................................................19

2.    Amazon's $2 hazard pay was a raise and workers were
      entitled to receive that raise in their Leave Law payments ...................21

3.    Plaintiffs have standing to seek injunctive relief on
      behalf of a class ...............................................................................22

4.    Section 191 of the New York Labor Law provides a
      cause of action for breach of statutory rights .......................................23

CONCLUSION ...............................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page**

### FEDERAL CASES

*Ackerman v. Coca-Cola Co.*,
   No. 09 Civ. 0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ................................5

*Businesses for a Better New York v. Angello*,
   341 F. App'x 701 (2d Cir. 2009) ..................................................................7

*Cavalotti v. Daddyo's BBQ, Inc.*,
   No. 15 Civ. 6469, 2018 WL 5456654 (E.D.N.Y. Sept. 8, 2018)................................24

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983).........................................................................16, 17

*City of New York v. Beretta U.S.A. Corp.*,
   315 F. Supp. 2d 256 (E.D.N.Y. 2004) .......................................................14

*City of New York v. Beretta U.S.A. Corp.*,
   524 F.3d 384 (2d Cir. 2008).................................................................18

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)..........................................................................23

*Crawford v. Coram Fire Dist*,
   No. CV 12-3850, 2015 WL 10044273 (E.D.N.Y. May 4, 2015) ...............................20

*Desiano v. Warner-Lambert & Co.*,
   467 F.3d 85 (2d Cir. 2006)....................................................................4

*Does v. Scalia*,
   No. 3:20-cv-01260, ECF No. 1 (M.D. Pa. July 22, 2020) .........................................2, 5

*DoubleLine Capital LP v. Odebrecht Fin., Ltd.*,
   323 F. Supp. 3d 393 (S.D.N.Y. 2018).......................................................15

*Eastside, Inc. v. Waste Mgmt. of New York, L.L.C.*,
   405 F. Supp. 3d 408 (W.D.N.Y. 2019) .....................................................13

*Ellis v. Tribune Television Co.*,
   443 F.3d 71 (2d Cir. 2006)....................................................................2, 3

*Floyd v. City of New York*,
   283 F.R.D. 153 (S.D.N.Y. 2012) .............................................................23

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000).........................................................................................................16

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
    505 U.S. 88 (1992)..................................................................................................6, 7, 8

*Goya Foods, Inc. v. Tropicana Prods., Inc.*,
    846 F.2d 848 (2d Cir. 1988)......................................................................................2

*Hill v. City of New York*,
    136 F Supp 3d 304 (E.D.N.Y. 2015) .......................................................................22

*In re Am. Fed'n of Labor*,
    No. 20-1158, 2020 WL 3125324 (D.C. Cir. June 11, 2020) ...........................................9

*Jacobsen v. New York City Health & Hosps. Corp*,
    No. 12 Civ. 7460, 2013 WL 4565037 (S.D.N.Y. Aug. 28, 2013) .................................9

*Lindsey v. Caterpillar, Inc.*,
    480 F.3d 202 (3d Cir. 2007).........................................................................................5

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir 2010)........................................................................................24

*Montauk Oil Transp. Corp. v. Tug El Zorro Grande*,
    54 F.3d 111 (2d Cir. 1995).........................................................................................18

*NAACP v. AcuSport, Inc.*,
    271 F.Supp.2d 435 (E.D.N.Y. 2003) ...................................................................12, 14

*Nat'l Commc'ns Ass'n v. Am. Tel. and Tel. Co.*,
    46 F.3d 220 (2d Cir. 1995)........................................................................................2, 3

*Pedraza v. Shell Oil Co.*,
    942 F.2d 48 (1st Cir. 1991).........................................................................................5

*Sakellaridis v. Polar Air Cargo, Inc.*,
    104 F. Supp. 2d 160 (E.D.N.Y. 2000) ....................................................................4, 7

*Segedie v. Hain Celestial Grp., Inc.*,
    No. 14 Civ. 5029, 2015 WL 2168374 (S.D.N.Y. May 7, 2015).....................................5

*Sosnowy v. A. Perri Farms, Inc.*,
    764 F. Supp. 2d 457 (E.D.N.Y. 2011) ......................................................................20

*Steel Inst. of New York v. City of New York*,
    832 F. Supp. 2d 310 (S.D.N.Y. 2011) ....................................................................7, 8

*Steel Inst. of N.Y. v. City of New York*,
    716 F.3d 31 (2d Cir. 2013) ...................................................................................5

*Summers v. Earth Is. Inst.*,
    555 U.S. 488 (2009) ...........................................................................................22

*United States v. Herrera*,
    584 F.2d 1137, 1149 (2d Cir. 1978) ...................................................................6

*Wing Kwong Ho v. Target Const. of NY, Corp.*,
    No. 08 Civ. 4750, 2011 WL 1131510 (E.D.N.Y. Mar. 28, 2011) .............................24

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ...........................................................................................6

## STATE CASES

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
    750 N.E.2d 1097 (N.Y. Ct. App. 2001) ...........................................................12, 13

*Amalgamated Transit Union Local 1277 v. Los Angeles Cty. Metro. Transp. Auth.*,
    107 Cal. App. 4th 673, 32 Cal. Rtr. 2d 207 (2003) ......................................19

*Binenfeld v. New York State Dep't of Health*,
    226 A.D.2d 935, 640 N.Y.S.2d 924 (1996) ......................................................6

*Birke v. Oakwood Worldwide*,
    169 Cal. App. 4th 1540 (2009) ........................................................................11

*Burns, Jackson, Miller, Summit & Spitzer v. Linder*,
    451 N.E.2d 459 (N.Y. Ct. App. 1983) .............................................................13

*Conway v. Circus Circus Casinos, Inc.*,
    8 P.3d 837 (Nev. 2000) .....................................................................................19

*Copart Indus., Inc. v. Consol. Edison Co. of New York*,
    41 N.Y.2d 564, 362 N.E.2d 968 (1977) ...........................................................11

*Daniels v. New York City Transit Auth.*,
    35 N.Y.3d 938, 146 N.E.3d 1160 (2020) ..........................................................6

*Haire v. Bonelli*,
    870 N.Y.S.2d 591, 595 (2008) .........................................................................12

*Hicks v. Allegheny E. Conf. Ass'n of Seventh-Day Adventists,*
    712 A.2d 1021, 1021-22 (D.C. Ct. App. 1998) ....................................18, 19

*Massey v. McDonalds,*
    20 CH 4247 (Circuit Ct. of Cook County June 24, 2020) ...........................11

*Meeker v. Van Rensselaer,*
    15 Wend. 387 (N.Y. Sup. Ct. 1836) .............................................................11

*Monaghan v. Roman Catholic Diocese of Rockville Ctr,*
    85 N.Y.S.3d 475 (2018).........................................................................11, 12

*New York v. Schenectady Chems.,*
    479 N.Y.2d 1010 (1984) ..............................................................................14

*People v. Pymm,*
    76 N.Y.2d 511, 561 N.Y.S.2d 687, 563 N.E.2d 1 (1990)..............................5

*Pironti v. Leary,*
    42 A.D.3d 487, 840 N.Y.S.2d 98 (2d Dep't 2007)......................................15

*Raritan Dev. Corp. v. Silva,*
    91 N.Y.2d 98 (1997)....................................................................................21

*Rocha v. GRT Constr. of New York,*
    145 A.D.3d 926 (N.Y. App. Div. 2016) .........................................................7

*Roth v. City of St. Joseph,*
    147 S.W. 490 (Ks. Ct. App. 1912)...............................................................11

*Saab v. Massachusetts CVS Pharmacy, LLC,*
    452 Mass. 564, 896 N.E.2d 615 (2008) .......................................................19

*Samiento v. World Yacht Inc.,*
    10 N.Y.3d 70 (2008)....................................................................................20

*Seigle v. Bromley,*
    124 P. 191, 195 (Colo. Ct. App. 1912) ........................................................13

*Stock v. Ronan,*
    313 N.Y.S. 2d 508 (1970)............................................................................11

*Tierney v. Capricorn Inv'rs, L.P.,*
    189 A.D.2d 629 (App. Div. 1st Dept. 1993)................................................24

*Trimarco v. Klein*,
    56 N.Y.2d 98, 436 N.E.2d 502 (1982) ............................................................5

*Truelove v. Northeast Capital & Advisory, Inc.*,
    95 N.Y.2d 220 (2000) 21

*Vega v. CM and Assoc. Constr. Mgt., LLC*,
    175 A.D.3d 1144 (N.Y. App. Div. 1st Dept 2019) ..........................................24

*Woodyear v. Schaefer*,
    57 Md. 1 (1881) ............................................................................................14


**FEDERAL RULES AND STATUTES**

29 C.F.R. § 1910.132 ............................................................................................2

29 C.F.R. § 1910.134 ........................................................................................2, 9

29 C.F.R. § 1910.141 ............................................................................................9

29 U.S.C. § 653(b)(4) .......................................................................................4, 7

29 U.S.C. § 659(c) ................................................................................................3

29 U.S.C. § 667(a) ............................................................................................8, 9


**STATE LAWS**

N.Y. Lab. L. §§ 191(1)(a)(i) ..............................................................................20

N.Y. Lab. L. §§ 191(1)(a)(i)(d) .........................................................................20

N.Y. Lab. L. § 200 ...............................................................................................6

N.Y. Lab. L. §200(1) ......................................................................................8, 10

N.Y. Workers' Comp. Law § 11 .........................................................................18

N.Y. Workers' Comp. Law § 142 .......................................................................18


**OTHER AUTHORITIES**

Restatement (Second) of Torts, § 821B, cmt. g (1979) .................................11, 12

2020 N.Y. Senate Bill S8091 § 5 .......................................................................20

**INTRODUCTION**

Plaintiffs allege longstanding state law claims asserting that Amazon's failure to follow New York public health and safety laws during the pandemic endangers workers and the public. The coronavirus and its crippling consequences for New York may be novel, but Plaintiffs' claims in this case are not.

Amazon urges the Court to defer to OSHA, an agency that has affirmatively decided to ride out the pandemic on the sidelines and whose expertise is, in any event, not needed here. Plaintiffs' Amended Complaint asserts violations of *state* law and guidance, bears little relation to any OSHA standard, and alleges New York statutory and common law claims expressly preserved by the OSH Act. Amazon's challenge to Plaintiffs' standing to seek injunctive relief likewise is of no merit, as Plaintiffs raise ample concerns about the current conditions at JFK8 and the risk that COVID-19 will spread as a result. Finally, Plaintiffs' wage claims under the Labor Law are expressly contemplated by New York's COVID-19 paid leave law.

This case may raise difficult questions, including, ultimately, whether the current severity of the pandemic and the working conditions at JFK8 justify an injunction. But there should be no question that Plaintiffs plausibly allege the elements of these causes of action, which workers and the public have traditionally used to protect themselves from violations of public health and safety laws. These questions are not appropriately resolved on a motion to dismiss. The Court should deny Amazon's motion in its entirety.

**ARGUMENT**

**A.    The Court should not defer to OSHA under the primary jurisdiction doctrine.**

1.    <u>Plaintiffs' claims are not within the special competence of OSHA.</u>

Primary jurisdiction is a prudential doctrine that is "narrow" and intended to "guard

against premature judicial encroachment upon an agency's sphere of responsibility and expertise." *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988). Amazon points to four "factors" it says govern the doctrine, but the case it cites cautioned that there is no "rigid formula," and that the benefits of agency expertise must be weighed against the "potential costs resulting from complication and delay in the administrative proceedings." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82-83 (2d Cir. 2006) (internal quotation marks omitted). Comparing the complaint against the *Ellis* factors and potential costs of delay reveals what a poor fit this case is for relinquishing this Court's oversight role to an overburdened agency.

The first two *Ellis* factors concern the agency's expertise and discretion over questions posed by the litigation. Here, if Plaintiffs were asking this Court to opine on the adequacy of protective equipment provided by Amazon, or the quality of its respirators, then these factors *might* counsel in favor of deferring to OSHA's primary jurisdiction. *See* Defs.' Br. at 4 (citing 29 C.F.R. § 1910.132 on PPE and 29 C.F.R. § 1910.134 on respirators, which are not used by workers at JFK8). But this case involves the timeliness and adequacy of leave payments and whether Amazon has sufficiently informed its JFK8 workers of policies it claims to have implemented at the corporate level. These questions require the application of law to disputed facts, matters well within the conventional expertise of judges. *See Goya*, 846 F.2d at 853; *Nat'l Commc'ns Ass'n v. Am. Tel. and Tel. Co.*, 46 F.3d 220, 224 (2d Cir. 1995) ("determining whether NCA paid its bills on time . . . [does not present] technical issues").

Amazon also points to *Does v. Scalia*, No. 3:20-cv-01260, ECF No. 1 (M.D. Pa. July 22, 2020) for the proposition that OSHA has the authority to regulate COVID-related hazards under the general duty clause. Defs.' Br. at 5. But OSHA's theoretical authority to cite Amazon under the general duty clause for conditions at JFK8 is a far cry from a pending administrative

proceeding that might lead to inconsistent rulings if not allowed to run its course. Concerns about parallel proceedings animate the third and fourth *Ellis* factors, and OSHA's pattern of COVID-related enforcement suggests those factors are not at play here. *Does v. Scalia* was filed precisely *because* OSHA declined to exercise its authority despite several workers filing complaints with the agency against the same employer over a three-month period. In that case, OSHA revealed that it has issued only four COVID-related citations in response to 7,300 worker complaints. *Does v. Scalia*, No. 3:20-cv-01260, ECF No. 43-1, at 96:8-16.[1]

Even if a JFK8 worker did initiate an OSHA complaint and OSHA chose to respond with an inspection, the agency could take up to six months to issue a citation and proposed penalty, whose implementation would be stayed pending any appeal by Amazon. 29 U.S.C. § 659(c). In short, waiting for OSHA to act when it may never do so would "impose[] enormous costs" that the plaintiffs here should not have to endure simply because the OSHA process is an available alternative. *Nat'l Commc'ns Ass'n*, 46 F.3d at 225. Amazon's effort to convert this alternative option into a jurisdictional prerequisite should be rejected. *See* Defs.' Br. at 6. This Court can resolve the "relatively simple factual dispute" this case presents "far more expeditiously" than would be possible through OSHA. *Nat'l Commc'ns Ass'n*, 46 F.3d at 225. It should do so.

2.   OSHA has no jurisdiction over public health and safety issues governed by state law.

The Court need not analyze the *Ellis* factors to reject Amazon's primary jurisdiction argument. Not only does this case not call upon OSHA's special expertise; it does not even attempt to enforce the laws that OSHA is charged with enforcing—or federal law at all.

---

[1] *See also* Exclusive: OSHA Never Visited Missouri Poultry Facility After COVID-19 Complaints, KMBC Kansas City, *available at* https://www.kmbc.com/article/exclusive-osha-never-visited-missouri-poultry-facility-after-covid-19-complaints/33660429 (last visited August 23, 2020) (after receiving complaint, OSHA sent employer a letter stating it did not intend to conduct an inspection, and closed the file less than three weeks later, for a facility where 371 workers later tested positive).

Plaintiffs' state law claims rely principally on *New York*'s "minimum requirements" for businesses operating during the pandemic and *New York* leave law. To be sure, those mandates incorporate some guidance from federal agencies, but they are state law. It defies reason and the principles of federalism to suggest that when New York promulgated those requirements it surrendered its jurisdiction to enforce them to a federal agency (or that it surrendered its residents' right to have those requirements enforced via private claims).

3.   Amazon's arguments as to the Court's competence to decide this matter would apply to a wide swath of common law claims.

Amazon's primary jurisdiction argument appears not to be driven by the primary jurisdiction doctrine itself, since it makes little sense to defer to OSHA's enforcement in an area where OSHA is not performing enforcement and with respect to state requirements over which OSHA has no jurisdiction. Rather, the thrust of Amazon's argument is that the Court should defer because public safety and health claims raise complex questions of the appropriate standard of care. That argument proves too much, sweeping in many of the kinds of claims traditionally litigated under state common law that are critical to protecting public health and safety. Yet common law claims, even claims raising complex questions regarding the duty of care, have historically "formed the bedrock of state regulation," and are "a critical component of the States' traditional ability to protect the health and safety of their citizens." *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 86 (2d Cir. 2006) (internal citation and quotation omitted).

OSHA's authority to protect workers (which it has not exercised here) exists alongside this state-law framework. OSHA has never displaced these enforcement mechanisms, and the OSH Act's savings provision expressly contemplates a role for private enforcement under state law. 29 U.S.C. § 653(b)(4); *Sakellaridis v. Polar Air Cargo, Inc.*, 104 F. Supp. 2d 160, 163 (E.D.N.Y. 2000) ("There is a consensus that the savings clause operates to save state tort

rules."); *Pedraza v. Shell Oil Co.*, 942 F.2d 48, 53 (1st Cir. 1991) (calling consensus "solid" and collecting cases); *People v. Pymm*, 76 N.Y.2d 511, 523-24, 561 N.Y.S.2d 687, 563 N.E.2d 1 (1990), cert. denied, 489 U.S. 1085 (1991). Moreover, the rights Plaintiffs seek to vindicate here extend beyond the workplace and concern the health of the surrounding community, over which OSHA has neither expertise nor legal authority. *Steel Inst. of N.Y. v. City of New York*, 716 F.3d 31, 33 (2d Cir. 2013). OSHA recently reiterated this limitation on its authority in the same case Amazon cites here. *Does v. Scalia*, No. 3:20-cv-01260, ECF No. 46 at 15 n.9 (citing *Lindsey v. Caterpillar, Inc.*, 480 F.3d 202, 208 (3d Cir. 2007) for the proposition that "The [OSH] Act is limited in scope, . . . as jurisdiction under the Act extends only to the employee-employer relationship within the workplace.").

To be sure, state law claims raising public safety and health questions will call on areas of expertise with which courts may not have great familiarity. But that is so for many torts that implicate standards of care, including medical malpractice claims. Plaintiffs' claims are substantially more straightforward than the typical claim raising a common law duty because these claims are based on the mandatory "minimum requirements" of New York public health law. *E.g.*, *Ackerman v. Coca-Cola Co.*, No. 09 Civ. 0395, 2010 WL 2925955, at *14 (E.D.N.Y. July 21, 2010) (question whether corporation violated regulation "is one courts are well-equipped to handle"); *Segedie v. Hain Celestial Grp., Inc.*, No. 14 Civ. 5029, 2015 WL 2168374, at *13 (S.D.N.Y. May 7, 2015) (similar). Those requirements provide the Court with the standard of care Amazon owes its workers (under the § 200 claim) and the public generally (under the public nuisance claim). *Trimarco v. Klein*, 56 N.Y.2d 98, 105, 436 N.E.2d 502, 505 (1982) (where there is a customary "way of doing things safely, this custom may be proved to show that [the one charged with the dereliction] has fallen below the required standard."); *see also* N.Y.

Pattern Jury Instr.--Civil 2:16.

Although the NY Forward guidelines are mandatory "minimum requirements," the same analysis would apply even if they were not binding. Non-mandatory guidelines are perfectly good evidence of the accepted method of "doing things safely." *Daniels v. New York City Transit Auth.*, 35 N.Y.3d 938, 939, 146 N.E.3d 1160 (2020) (finding that the "trial court properly admitted plaintiff's expert testimony regarding non-mandatory gap standards").

And there is no due process problem with bringing common law claims to enforce public health standards, whether or not they are binding on their own. All due process requires is that "the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *United States v. Herrera*, 584 F.2d 1137, 1149 (2d Cir. 1978). NYLL § 200 and New York's public nuisance doctrine provide this warning. That they do not delineate exactly what acts will lead to liability is immaterial. *Binenfeld v. New York State Dep't of Health*, 226 A.D.2d 935, 936, 640 N.Y.S.2d 924, 926 (1996). It should come as no surprise to Amazon that it will be held to a reasonable standard of care, and—for the reasons described above—that state- and federally-promulgated guidelines will be relevant to determining where that standard lies.

**B.   Plaintiffs state a NYLL § 200 claim.**

1.   Plaintiffs' § 200 claim is not preempted by the OSH Act.

Plaintiffs' § 200 claim is not preempted. The OSH Act "was not intended to be all encompassing[.]" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 102 (1992) (plurality); *see also Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (presumption against preemption). To the contrary, Congress "expressly saved two areas from federal pre-emption." *Gade*, 505 U.S at 96. The OSH Act declares that nothing in the Act shall be interpreted to (1) supersede or otherwise affect "common law or statutory rights, duties, or liabilities of employers and employees under

any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment," 29 U.S.C. § 653(b)(4); or (2) "prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title." *Id.* § 667(a). Each of these clauses provides an independent basis for rejecting Amazon's preemption arguments in this case.

As an initial matter, as discussed in § I.B., *supra*, the "savings clause" of § 653(b)(4) expressly preserves state tort and statutory claims like the right to a safe workplace codified at NYLL § 200, which is "a codification of the common-law duty of property owners and general contractors to provide workers with a safe place to work." *Rocha v. GRT Constr. of New York*, 145 A.D.3d 926, 927 (N.Y. App. Div. 2016) (internal quotation and citation omitted). In *Sakellaridis v. Polar Air Cargo, Inc.*, a court in this district rejected a preemption challenge to New York's scaffold law, concluding that "[i]t is not consequential that the standard of care is prescribed by the common law, a separate statutory scheme, or an administrative scheme. Because [the scaffold law] provides a remedy for personal injuries suffered in the course of employment, it is not preempted." 104 F. Supp. 2d at 162; *see also Businesses for a Better New York v. Angello*, 341 F. App'x 701, 706 (2d Cir. 2009) (rejecting preemption challenge to scaffold law, noting "OSHA is not intended to 'diminish or affect' the 'statutory rights, duties, or liabilities of employers' with respect to work-related injuries" (quoting 29 U.S.C. § 653(b)(4)).

*Gade v. Nat'l. Solid Wastes Mgmt. Ass'n.* does not alter this analysis. Unlike the state law at issue in *Gade*, § 200 does not "directly and substantially regulate worker health." *Steel Inst. of New York v. City of New York*, 832 F. Supp. 2d 310, 321-22 (S.D.N.Y. 2011), *aff'd*, 716 F.3d 31 (2d Cir. 2013) (citing *Gade*). Instead, § 200 codifies a common-law general duty of care to provide a safe workplace. *See Rocha*, 145 A.D.3d at 927. Moreover, § 200's protections extend

7

not just to employees, but to "all persons…lawfully frequenting" the places to which the statute applies. N.Y. Lab. L. §200(1). Such laws of "general applicability," that regulate the conduct of workers and non-workers alike, "would generally not be preempted," even if OSHA had promulgated a standard on a given issue. *Gade*, 505 U.S. at 107; *see also Steel Inst.*, 832 F. Supp. 2d at 324 ("there can be no 'field preemption' if State law is one of general applicability within the meaning of *Gade*").

Because Plaintiffs' § 200 claim is so clearly saved from preemption, Amazon may contend that the N.Y. Forward minimum requirements and New York leave law that help to prescribe the duty of care on which the § 200 claim is based are preempted by the OSH Act. But this argument too would fail. First, with respect to the minimum requirements, New York Forward does not prescribe workplace-specific standards, but rather general rules of conduct that speak to how businesses can continue to operate during a pandemic without risk of spread among workers, visitors, customers, and others who may enter a facility, contract the disease, and spread it among the public generally. *See, e.g.*, Am. Comp. ¶ 70(j) (regarding a communications plan for workers, visitors, and customers). Although some of these rules speak to conduct in workplaces, they apply to workers and nonworkers alike and are best understood as "specific applications of a general prohibition on conduct that endangers the populace, such as taxi regulations that protect drivers while protecting passengers and pedestrians." *Steel Inst. of New York*, 716 F.3d at 39 (2d Cir. 2013). These rules of general applicability "do not conflict with OSHA standards" and "at most . . . provide additional or supplemental requirements on some areas regulated by OSHA." *Id.*

Second, even if the minimum requirements or the leave laws were workplace standards, they would be saved from preemption by 29 U.S.C. § 667(a) because OSHA has expressly

*declined* to promulgate an occupational standard relating to COVID-19. *In re Am. Fed'n of Labor*, No. 20-1158, 2020 WL 3125324, at *1 (D.C. Cir. June 11, 2020). Amazon points to two existing OSHA standards that it claims apply to this case—one relating to atmospheric contaminants and the other to the provision of water, toilets, and washing facilities, Br. at 10— but neither of those standards addresses the need for social distancing, to allow workers leave when they are sick or have been exposed to an infectious disease, or to allow workers adequate time to wash and sanitize to protect against the spread of an infectious disease. *See* 29 C.F.R. § 1910.134 (addressing respiratory protection from "harmful dusts, fogs, fumes, mists, gases, smokes, sprays, or vapors"); 29 C.F.R. § 1910.141 (addressing access points for potable water and toilet facilities). And certainly nothing in either standard is inconsistent with New York's mandates.

Finally, Amazon's unsupported claim that the OSH Act's general duty clause preempts Plaintiffs' § 200 claim deserves short shrift.[2] That argument is inconsistent with the express language in the OSH Act permitting workers to bring state law claims in cases where employers breach their duties to workers. Furthermore, this argument reads 29 U.S.C. § 667(a) out of the Act entirely. Under Amazon's reading, all state laws regarding workplace safety and health would be preempted whether or not OSHA had promulgated a standard on the question at issue, but § 667(a) of the Act expressly "preserv[es] . . . state authority in the absence of a federal standard." *Gade*, 505 U.S. at 100.

2.   <u>Plaintiffs need not establish causation of an existing injury in order to seek injunctive relief under § 200.</u>

Amazon's claim that Plaintiffs fail to plead that its conduct is the proximate cause of their

---

[2] Amazon's reliance on *Jacobsen v. New York City Health & Hosps. Corp.* is misplaced.  That case merely affirms the lack of a private right of action under the OSH Act, and provides no support for Amazon's preemption claim. *See* No. 12 Civ. 7460, 2013 WL 4565037, at *7 (S.D.N.Y. Aug. 28, 2013).

injuries, *see* Defs.' Br. at 11, misses the point. Plaintiffs do not seek damages for Amazon's failure to provide a safe workplace in violation of § 200. Instead, they invoke the statute's prophylactic mandate to ensure that Amazon "provide(s) reasonable and adequate protection to the lives, health and safety of all persons employed" at JFK8. *See* N.Y. Lab. L. § 200(1). Plaintiffs ask for an order that Amazon comply with its duty going forward. Am. Compl. ¶ 341.

Section 200 contains no requirement that Plaintiffs demonstrate existing injury in order to seek an injunction. Even if it did, Plaintiffs allege that they have already been harmed as a result of Amazon's breach of duty. *Id*. ¶ 339. In addition, Plaintiffs have amply alleged how Amazon's failure to provide a safe workplace at JFK8 has increased their risk of contracting COVID-19. For example, Amazon fails to provide clear information about leave available to workers who believe they have been exposed to or have contracted COVID-19, which in turn undermines workers' ability or willingness to stay at home and prevent spread of the virus. Am. Compl. ¶¶ 102-07; 123-25. Among other things, Amazon's byzantine human resources processes and lengthy response times cause workers to attend work when they may be sick. *Id.* ¶¶ 126-28. Also, Amazon's productivity requirements cause workers to work at a frenzied pace, even after discipline for those requirements was suspended, which discourages workers from taking safety precautions. *Id.* ¶¶ 214-40; 245-70. High temperatures in the facility and limited access to air-conditioned break rooms cause workers to crowd into break rooms, impeding social distancing. *Id.* ¶¶ 271-76. And Amazon fails to properly engage in contact tracing and fails to properly clean and sanitize high-touch surfaces. *Id.* ¶¶ 277-84; 321-24. These practices plausibly increase Plaintiffs' risk of contracting COVID-19. *See id.* ¶ 340. This risk is sufficiently impending to establish Plaintiffs' claim for injunctive relief.

**C.      Plaintiffs state a claim for public nuisance.**

Plaintiffs adequately plead public nuisance by alleging that Amazon's failure to follow

public health guidelines during the pandemic is "conduct or omissions which offend, interfere

with, or cause damage to the public in the exercise of rights common to all." *Copart Indus., Inc.*

*v. Consol. Edison Co. of New York*, 41 N.Y.2d 564, 568, 362 N.E.2d 968, 971 (1977).

1.      <u>Plaintiffs have sufficiently alleged interference with a public right.</u>

To state a public nuisance claim, Plaintiffs must allege that Amazon's conduct interferes

with a public right. Courts in New York and elsewhere have long held that "disease-breeding"

conduct by a private entity creates a public nuisance. *Meeker v. Van Rensselaer*, 15 Wend. 387,

399 (N.Y. Sup. Ct. 1836); *Roth v. City of St. Joseph*, 147 S.W. 490, 491 (Ks. Ct. App. 1912);

*Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1548-53 (2009); Restatement (Second) of

Torts § 821B cmt. g ("[T]he threat of communication of smallpox to a single person may be

enough to constitute a public nuisance because of the possibility of an epidemic."). In fact, courts

have already recognized that employers' failures to comply with public health guidance during

this pandemic may constitute a public nuisance by contributing to the spread of disease among

the public generally. *See, e.g.*, *Massey v. McDonalds*, 20 CH 4247 (Circuit Ct. of Cook County

June 24, 2020).

Amazon's argument (Defs.' Br. at 17) that Plaintiffs cannot allege interference with a

public right because Amazon is a private employer whose conduct occurs on private property is

fundamentally flawed. Conduct that substantially interferes with a public right supports public

nuisance claims whether that conduct occurs on public or private property. *See Stock v. Ronan*,

313 N.Y.S. 2d 508 (1970). The court's dismissal in *Monaghan v. Roman Catholic Diocese of*

*Rockville Ctr.* was not about where the conduct took place, but whether the public was affected.

11

85 N.Y.S.3d 475 (2018); *see also Haire v. Bonelli*, 870 N.Y.S.2d 591, 595 (2008) ("Plaintiff did not allege an interference with rights belonging to the general public, nor an interest in public land.").[3] Here, Plaintiffs allege an interference with the public right to be free from conduct that endangers public safety. *See NAACP v. AcuSport, Inc.*, 271 F.Supp.2d 435, 448 (E.D.N.Y. 2003).

Amazon also urges that "expanding" the public nuisance doctrine to this case would open the courthouse doors to a flood of litigation. *See* Defs.' Br. at 18. But the conduct alleged here—a private business's irresponsible conduct contributing to the spread of infectious disease among the public generally—is a paradigmatic public nuisance. Restatement (Second) of Torts, § 821B, cmt. g (1979). There is no risk of a flood of litigation. Plaintiffs do not allege merely that Amazon "could have done more" to prevent the spread of disease. *See* Defs.' Br. at 18. They allege that Amazon violates New York's minimum requirements for businesses to operate during the pandemic. With respect to those businesses that do not comply, only those people who experience special injury, as described below, have standing to sue.

2. <u>Plaintiffs have sufficiently alleged special injury.</u>

Although the public health is endangered by Amazon's conduct through increased risk of spread of COVID-19 and the associated impacts on hospitals and the health system at large—which is what makes Amazon's conduct a public nuisance—Plaintiffs have also alleged that they will suffer a "special injury beyond that suffered by the community at large," giving them standing to bring a public nuisance claim. *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1104 (N.Y. Ct. App. 2001) (citing *Burns, Jackson, Miller, Summit &*

---

[3] Amazon similarly stretches the finding made by the *Smithfield* court by claiming the court held that the risk employees will contract COVID-19 during a global pandemic is insufficient by itself to make any essential business a public nuisance. Defs.' Br. at 17. Rather, the *Smithfield* court held that "because of the significant measures Smithfield has implemented to combat the disease and the lack of COVID-19 at the facility, the Plant cannot be said to violate the public's right to health and safety." Here, of course, Plaintiffs have plausibly alleged that Amazon's skirting of federal and state public health guidance has infringed upon public health and safety. And, as Amazon is aware, there is hardly a "lack of COVID-19" at JFK8.

*Spitzer v. Linder*, 451 N.E.2d 459 (N.Y. Ct. App. 1983)).

Plaintiffs allege that they are directly at risk in a way that the public is not because they are forced to work under conditions that conflict with New York's minimum requirements and that increase the risk of spread of COVID-19 to them and to the people they live with. Am. Compl. ¶ 331. Plaintiffs are no different from the neighbors to a landfill emitting toxins. The public generally may suffer because, in order to avoid those toxins, they must avoid certain public spaces, but the neighbors lack that option and so they suffer directly when those toxins enter their homes. *Eastside, Inc. v. Waste Mgmt. of New York, L.L.C.*, 405 F. Supp. 3d 408, 444 (W.D.N.Y. 2019) ("Compared to individuals who do not own property or reside nearby and are merely affected by the Landfill's impact on public spaces, Plaintiffs' alleged injuries constitute a 'special injury.'"); *see also Seigle v. Bromley*, 124 P. 191, 195 (Colo. Ct. App. 1912) (neighbor to business engaging in conduct likely to contribute to the spread of disease can seek injunction to abate public nuisance).

Moreover, members of the public can take precautions against the generally increased risk of the spread of COVID-19 created by the misconduct of Amazon or other businesses that flout public health guidance. Members of the public can stay in their homes and socially distance from others. And if their work requires them to enter public spaces or even others' homes (for example to make repairs) they can wear masks or other personal protective equipment, and can socially distance within those spaces. JFK8 workers cannot protect themselves against Amazon's violations of the "minimum requirements" without risking their jobs, and they and the people they cohabitate with cannot reasonably take the precautions of social distancing or donning PPE inside their own homes. Furthermore, while the public may fear contracting the virus, Amazon workers and their cohabitants carry the distinct fear of contracting a virus in their workplace and

13

in their homes no matter what precautions they take. Am. Compl. ¶¶ 332-35.

      3.    <u>Plaintiffs have sufficiently alleged actual and proximate causation of the increased risk of exposure.</u>

Plaintiffs have also sufficiently alleged that Amazon's conduct causes an increased risk of spread of COVID-19. The Amended Complaint describes how Amazon has failed to (1) allow time for workers to engage in personal hygiene and sanitizing of their workstations and to socially distance during work and on breaks, (2) clearly communicate with workers about sick leave, promptly grant such leave, promptly pay workers for such leave, and pay them their complete wages for such leave, and (3) perform or provide for adequate contact tracing of its employees, in cooperation with public health authorities. *See* Am. Compl. ¶¶ 102-324. These violations of public health guidance and New York law increase the likelihood of spread of COVID-19.

It makes no difference that the dangers to the public health generally flow from a variety of sources that altogether contribute to the risk of spread. In cases like this one, "[t]he tortious actions or omissions of a defendant or defendants need not be the immediate cause of the injury to the public." *AcuSport, Inc.*, 271 F. Supp. 2d at 494. That is true even where there are other tortfeasors—in this context, other businesses and actors contributing to the spread of COVID-19. *New York v. Schenectady Chems.*, 479 N.Y.2d 1010 (1984). "It is no answer to a complaint of nuisance that a great many others are committing similar acts of nuisance . . . . One drop of poison in a person's cup, may have no injurious effect. But when a dozen, or twenty, or fifty, each put in a drop, fatal results may follow." *Woodyear v. Schaefer*, 57 Md. 1, 9-10 (1881).[4]

---

[4] *See also City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 282 (E.D.N.Y. 2004) ("Where it is difficult or impossible to separate the injury caused by one contributing actor from that caused by another and where each contributing actor's responsibility individually does not constitute a substantial interference with a public right, defendants may still be found liable for conduct creating in the aggregate a public nuisance if the suit is one for injunctive relief.").

Finally, even if the Court has doubts about the extent to which Amazon's conduct on its own increases the risk of spread to the public generally, those doubts should not be resolved on a motion to dismiss. As a general matter, "issues of proximate cause are often fact-laden, requiring a fully developed factual record, and not a bare-bones motion to dismiss." *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 462 (S.D.N.Y. 2018) (quotation omitted); *see also Pironti v. Leary*, 42 A.D.3d 487, 489, 840 N.Y.S.2d 98 (2d Dep't 2007) (issues of proximate cause are generally to be decided by the jury).

**D.     Plaintiffs have standing to seek injunctive relief.**

1.     Plaintiffs challenge Amazon's post-July 13 practices because workers continue to be unaware of the modified productivity requirements.

After Plaintiffs filed suit, Amazon informed some JFK8 workers that it had suspended "time off task" and other productivity-related penalties for time spent on safety measures. Am. Compl. ¶ 221. Previously, Amazon had communicated the change to managers with a list of talking points but had instructed them not to post the information publicly, meaning that workers remained unaware that they could engage in hygiene-related tasks without fear of discipline and defeating the purported purpose of Amazon's policy changes. *See id.* ¶¶ 232-233. The July 13 messages therefore heralded a significant change in Amazon's approach, prompting Plaintiffs to withdraw their preliminary injunction motion. (ECF No. 60.)

Amazon characterizes Plaintiffs' July 14 withdrawal letter as an admission that Amazon has solved the communications problem. *See* Defs.' Br. at 8. Plaintiffs were not so credulous. While acknowledging the significance of Amazon's about-face, Plaintiffs noted several potential shortfalls in Amazon's new communication efforts, including identifying workers who had not received the July 13 message. (Doc. No. 60 at 2-3.) The Amended Complaint filed two weeks later explains that, indeed, many workers at JFK8 were still unaware that rate requirements had

been relaxed, Am. Compl. ¶ 234; managers continued to emphasize rate goals, ¶ 240; rate information remained opaque so workers cannot determine whether their safety-related "time off task" was actually being excluded, ¶ 237, nor was the process for such exclusion clear, ¶ 262; and newly hired workers were not receiving the information about the modified requirements, ¶ 260. Thus, there are live controversies over Amazon's productivity policies and communications.

2.      Plaintiffs retain standing to challenge Amazon's pre-July 13 practices because it is not "absolutely clear" that they will not recur.

Additionally, even if Amazon's changes in response to this lawsuit did resolve Plaintiffs' concerns, Plaintiffs may challenge Amazon's practices as they existed at the time of filing because it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Amazon cannot show that it is "absolutely clear" that it will not reinstitute its prior practices given its view of its legal obligations (or lack thereof), Def.'s Br. 4-7, 14-20, and the lack of any indication that the policy changes or communications about them will remain in place until the threat to Plaintiffs is over. Nor does the July 13 message moot Plaintiffs' request for an order compelling Amazon to "[c]ontinue to communicate to workers, in writing, and communicate to all newly onboarded workers in writing, that Amazon has suspended rate requirements as a result of the COVID-19 pandemic." Am. Compl. ¶ 362(c)(ii). As a matter of logic, an alleged need for continued communications cannot be mooted by a single incomplete notification. *See, e.g.*, Am. Compl. ¶ 234 (July 13 message did not reach all workers).

Amazon says that, apart from mootness, the suspension and July 13 communication means Plaintiffs no longer face any risk of injury and therefore lack standing under *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) to challenge the pre-July 13 practices. But the standing question as to the pre-July 13 practices is whether Plaintiffs would face imminent harm

16

*if the prior state of affairs returned. See Lyons*, 461 U.S. at 109. If Amazon is permitted to prematurely reinstitute the pre-July 13 policies,[5] Plaintiffs will face the threat of harm again. And those claims are not mooted by Amazon's voluntary cessation of illegal conduct for the same reason *Lyons* was not mooted by the City's temporary moratorium on the offending policy. *See* 461 U.S. at 101 (case not moot because the moratorium was "by its terms . . . not permanent").

3.      Plaintiffs have standing to ensure that newly hired workers are notified about the modified productivity requirements.

Successfully communicating the relaxation of Amazon's productivity policies to all workers, old and new, is essential to comply with New York's minimum requirements and abate the nuisance Amazon has created. *See* Am. Compl. ¶ 70, ¶¶ 245-270. Plaintiffs have standing to require such communication for the same reason they have standing as to the rest of the abatement measures: because they are directly impacted and uniquely injured by Amazon's failures to meet the minimum requirements necessary to protect essential workers. *Id*. ¶ 70, ¶¶ 327-336. Amazon's claim that Plaintiffs cannot require adequate communication about the policy to new workers because Plaintiffs are not themselves new betrays a lack of understanding about why Amazon's practices constitute a public nuisance. Plaintiffs want Amazon to comply with New York's minimum requirements because the easier it is for the disease to be transmitted at JFK8, the more likely Plaintiffs or their loved ones are to become injured or die.[6]

---

[5] Amazon has already abandoned some of the policies that it suspended during the pandemic, including unlimited UPT and hazard pay. *See* Am. Compl. ¶ 119; Isobel Asher Hamilton, "Amazon drops $2 coronavirus pay raise for warehouse workers as CEO Jeff Bezos' fortune nears $150 billion," June 3, 2020, *available at* https://www.businessinsider.com/amazon-cuts-2-dollar-hazard-pay-bezos-150-billion-2020-6.

[6] Amazon argues that depleted cleaning supplies and inadequate sanitizing stations cannot be a basis for injunctive relief because supplies are eventually replaced and there are other bathrooms elsewhere in the facility. *See* Def.'s Br. 9 n.3. This argument ignores the allegations in the Amended Complaint explaining why having to take more time off task to go to a further away station or bathroom, or return to a station once it has been restocked, is a significant barrier to adequate hygiene at JFK8. Am. Compl. ¶¶ 245-255.

**E.      Workers' compensation exclusivity does not bar employee-plaintiffs' claims.**

The Workers' Compensation Law ("WCL") states that WCL-prescribed employer

liability "shall be exclusive and in place of any other liability whatsoever, to such employee, . . .

or any person otherwise entitled to recover damages, contribution or indemnity, at common law

or otherwise, on account of such injury or death or liability arising therefrom[.]" N.Y. Workers'

Comp. Law § 11. The Workmen's Compensation Board, which hears WCL claims, cannot issue

injunctions. *See* N.Y. Work. Comp. L. § 142 (enumerating Board's powers). Such claims are

thus not subject to WCL exclusivity.[7]

Amazon suggests that the WCL's use of the phrase "any other liability whatsoever"

broadens its scope to include injunctive relief. Defs.' Br. at 20. But this reading ignores the

remaining text of the statute, which makes clear that the liability contemplated takes the form of

"damages, contribution or indemnity." *See* N.Y. Work. Comp. L. § 11. *See City of New York v.

Beretta U.S.A. Corp.*, 524 F.3d 384, 401 (2d Cir. 2008) ("where specific words follow a general

word, the specific words restrict application of the general term to things that are similar to those

enumerated") (internal quotation and citation omitted). And importantly, none of the cases that

Amazon relies on for its overbroad reading of "liability" involve a request for injunctive relief.

*See, e.g.*, *Montauk Oil Transp. Corp. v. Tug El Zorro Grande*, 54 F.3d 111, 114 (2d Cir. 1995)

(holding that "liability" includes "penalties").

Every other jurisdiction to address the issue has concluded that workers' claims for

injunctive relief are not precluded by workers' compensation schemes. *E.g.*, *Hicks v. Allegheny

E. Conf. Ass'n of Seventh-Day Adventists*, 712 A.2d 1021, 1021-22 (D.C. Ct. App. 1998); *see

also Amalgamated Transit Union Local 1277 v. Los Angeles Cty. Metro. Transp. Auth.*, 107 Cal.

---

[7] The State of New York agrees. *See* ECF No. 49 (explaining that the WCL does not apply to injunctive relief).

App. 4th 673, 682, 132 Cal. Rtr. 2d 207, 213–14 (2003) (injunctive relief not precluded); *Conway v. Circus Circus Casinos, Inc.*, 8 P.3d 837 (Nev. 2000) (same); *Saab v. Massachusetts CVS Pharmacy, LLC*, 452 Mass. 564, 896 N.E.2d 615 (2008) (same).

**F.    Plaintiffs state a claim for failure to pay wages under NYLL § 191.**

On March 18, 2020, Governor Cuomo signed emergency COVID-19 paid sick leave legislation (the "Leave Law") so that workers would not have to "make the impossible choice between losing their job or providing for their family and going to work."[8]  The Governor, and New York's legislators, recognized that paid sick leave "is one of the most effective tools at protecting public health" and was necessary to curb the spread of COVID-19.[9]

1.    <u>Leave Law payments are wages subject to the provisions of New York Labor Law § 191.</u>

The Leave Law requires employers to promptly pay their workers' wages during their mandatory or precautionary quarantine or isolation due to COVID-19, *see* 2020 N.Y. Senate Bill S8091 §1(c),[10] and grants the Commissioner of Labor the authority to promulgate standards for payment of sick leave*, see id.* §1(5). Pursuant to that authority, the New York State Department of Labor ("NYDOL") has issued guidance that COVID-19 paid sick leave payments "are subject to the frequency of pay requirements of Section 191 of the Labor Law,"[11] an interpretation that is

---

[8] *See* Governor Cuomo Signs Bill to Guarantee Paid Leave for New Yorkers Under Mandatory or Precautionary Quarantine Due to COVID-19, March 18, 2020, https://www.governor.ny.gov/news/governor-cuomo-signs-bill-guarantee-paid-leave-new-yorkers-under-mandatory-or-precautionary.

[9] *See* L 2020, Governor's Program Bill Memo No. 10, https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/GPB_10_QUARANTINE_LEAVE_BILL.PDF

[10] Amazon's claim that Plaintiffs Chandler and Bernard have not alleged they were subject to such an order, *see* Defs.' Br. at 23 n.8, is specious. Both Plaintiffs tested positive for COVID-19 and would indisputably qualify for such an order.

[11] New York State Department of Labor, "New York Paid Family Leave COVID-19: Frequently Asked Questions" *available at* https://paidfamilyleave.ny.gov/new-york-paid-family-leave-covid-19-faqs.

entitled to deference. *See Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 79 (2008). Section 191 of the Labor Law, in turn, requires payment of wages within seven calendar days of the end of the week in which wages are earned, in the case of manual workers, and not less frequently than semi-monthly, in the case of clerical and other workers. N.Y. Lab. L. §§ 191(1)(a)(i), (d).

Amazon's claims that Leave Law payments are not "wages" under § 190 of the Labor Law (and that Plaintiffs cannot seek redress under § 191) misread both the text of the Labor Law and the purpose of the Leave Law. Section 190 defines wages as "the earnings of an employee for labor or services rendered," and specifically states that "[t]he term 'wages' also includes benefits or wage supplements" as defined in § 198-c. Section 198-c, in turn, includes "vacation, separation, and holiday pay" within its definition of "benefits." N.Y. Lab. L. § 198-c. Amazon's argument that § 191 is inapplicable is inconsistent with the statutory language and NYDOL's interpretation—made pursuant to an express statutory delegation—that leave payments *are* subject to § 191. *See* 2020 N.Y. Senate Bill S8091 § 5.

The cases and opinion letter Amazon cites are not to the contrary. *Crawford v. Coram Fire Dist.* did not involve a statutory entitlement, but rather a claim for payment of accrued sick pay. No. CV 12-3850, 2015 WL 10044273, at *5 (E.D.N.Y. May 4, 2015) (granting summary judgment to employer in absence of contractual requirement to pay accrued vacation, sick, and holiday pay); *see also Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 476 (E.D.N.Y. 2011) (no statutory right to accrued vacation and sick day payments upon termination); N.Y. Dep't of Labor, Request for Opinion, Personal/Sick/Vacation Policy (Mar. 11, 2010), *available at* https://on.ny.gov/33pXXhh (relying on absence of federal or state law requiring paid sick time). Here, the wages at issue are not owed pursuant to a contractual agreement, but are legally obligated wage replacements for workers forced to stay home during a pandemic.

Finally, Amazon cites to a case where courts refused to follow agency guidance when the plain language of the law was at odds with the agency interpretation. *See Raritan Dev. Corp. v. Silva*, 91 N.Y.2d 98 (1997). But the payment of COVID-19 sick leave is not expressly excluded from Section 191 and therefore the Court should defer to NYDOL's guidance.

    2.    <u>Amazon's $2 hazard pay was a raise and workers were entitled to receive that raise in their Leave Law payments.</u>

The $2 per hour "hazard pay" that Amazon paid during the early months of the pandemic is wages and Plaintiffs and members of the putative class were entitled to receive it as part of their payments under the Leave Law. Amazon's failure to include $2 per hour hazard pay in Leave Law payments, *see* Am. Compl. ¶¶ 200-01; 209, is contrary to NYDOL guidance on rate of pay for workers receiving Leave Law payments, which requires employers to "pay the amount that the worker would have otherwise received had they been continuing to work for that period based upon the amount that the employee was scheduled or would have been[.]"[12]

Amazon incorrectly claims that hazard payments are "wage supplements" that are not wages for purposes of the Leave Law, but this argument relies on an inaccurate reading of the New York Court of Appeals' decision in *Truelove v. Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220 (2000). In *Truelove*, the Court of Appeals assessed whether a financial analyst who sought payment of a quarterly bonus following his resignation could recover under the Labor Law. *Id.* at 222. The Court of Appeals determined that the bonus was not "wages" as defined by § 190 because it was "incentive compensation" based on factors falling outside the employee's actual work. *Id.* at 224. The court specified:

> In our view, the wording of the statute, in expressly linking earnings to an employee's labor or services personally rendered, contemplates a more direct relationship between an employee's own

---

[12] *See* NYDOL, New York Paid Family Leave COVID-19: Frequently Asked Questions, https://paidfamilyleave.ny.gov/new-york-paid-family-leave-covid-19-faqs.

> performance and the compensation to which that employee is
> entitled. Discretionary additional remuneration, as a share in a
> reward to all employees for the success of the employer's
> entrepreneurship, falls outside the protection of the statute.

*Id.*

Here, unlike in *Truelove*, Amazon's $2 per hour hazard payments were directly linked to the employees' performance—specifically, their hours worked. *See* Am. Compl. ¶¶ 200-01; 209-10. In Amazon's own telling, the payments were designed "to reward employees for their essential work during the pandemic"—not to reflect the success of Amazon's entrepreneurship, as in the bonuses in *Truelove*. *See Truelove*, 95 N.Y. 2d at 224. Including hazard pay in Leave Law payments also serves the Leave Law's goal of keeping sick workers home without financial penalty. *See supra* n.11.

3.   <u>Plaintiffs have standing to seek injunctive relief on behalf of a class.</u>

Article III standing requires "at least one plaintiff who, at least, faces the risk of injury that is redressable by the requested injunctive relief" and "to have standing to request injunctive or declaratory relief, the injury alleged must be capable of being redressed through injunctive relief at that moment." *Hill v. City of New York*, 136 F Supp 3d 304, 347 (E.D.N.Y. 2015), order amended and supplemented, 13-CV-6147, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019). A plaintiff must have "a personal stake in the outcome." *Summers v. Earth Is. Inst.*, 555 U.S. 488, 493 (2009).

Plaintiffs have standing because they have alleged a concrete, particularized, and actual injury traceable to Amazon's actions for which a favorable judicial decision will redress the injury. *See id*. at 493. Plaintiffs Chandler and Bernard each allege that they did not receive the full pay they were owed under the Leave Law. Am. Compl. ¶¶ 200-02; 206-10. This injury is directly traceable to Amazon's failure to properly calculate and pay workers subject to the Leave

22

Law. A favorable decision in this case will force Amazon to follow the law, which will redress the injury. Amazon's reliance on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) is misplaced because Plaintiffs' injury is not speculative. Plaintiffs seek to prevent others from experiencing the same delays and underpayment, but Plaintiffs will also benefit from the requested relief because they suffered the injury they seek to prevent for the class. In other words, Plaintiffs' injury is not merely imminent—it is actual. *See Clapper*, 568 U.S. at 409.

Moreover, the future injury that may be experienced by the members of the putative class is not "too speculative for Article III purposes[.]" *See id.* New York State still records over 4,200 new COVID-19 cases per week.[13] Even if Amazon is correct that its rate of infection is the same as that of the surrounding community, the current rate of infection in New York City would mean the 5,000-person JFK8 facility would average more than one new case of COVID-19 per week—and that number would increase dramatically in the event of a "second wave" of infections. Under these circumstances, "the frequency of alleged injuries inflicted by the practices at issue . . . creates a likelihood of future injury sufficient to address any standing concerns." *Floyd v. City of New York*, 283 F.R.D. 153, 170 (S.D.N.Y. 2012).

> 4.    Section 191 of the New York Labor Law provides a cause of action for breach of statutory rights.

Amazon erroneously claims that Section 191 of the New York Labor Law does not provide a cause of action for breach of statutory rights. But that argument is based on a misreading of *Tierney v. Capricorn Inv'rs, L.P.*, a breach of contract case in which the plaintiff attempted to use the Labor Law to recover bonus compensation over and above what was guaranteed in his contract. *See* 189 A.D.2d 629, 630 (App. Div. 1st Dep't. 1993). In addition to

---

[13] *See* N.Y. Times, Coronavirus in the U.S.: Latest Map and Case Count,
https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html (last visited August 25, 2020).

affirming dismissal of the breach of contract claim, the *Tierney* court found that the plaintiff had no claim under the Labor Law because the bonus compensation was not "wages." *See id.* at 632.

Here, as discussed above, Plaintiffs seek to recover wages within the meaning of the Labor Law. The Labor Law's remedies provision permits an aggrieved employee to recover wages, interest, attorneys' fees, and liquidated damages for violations of § 191. *See Wing Kwong Ho v. Target Const. of NY, Corp.,* No. 08 Civ. 4750, 2011 WL 1131510, at *14 (E.D.N.Y. Mar. 28, 2011). Contrary to Amazon's claim that the decision in *Vega v. CM and Assoc. Constr. Mgt., LLC* is an "outlier," Defs.' Br. at 25 n.9, courts in this Circuit routinely hold that plaintiffs may recover unpaid wages pursuant to § 191. 175 A.D.3d 1144, 1146 (N.Y. App. Div. 1st Dep't 2019) ("Labor Law § 198(1–a) expressly provides a private right of action for a violation of Labor Law § 191."); *see also, e.g.*, *Cavalotti v. Daddyo's BBQ, Inc.*, No. 15 Civ. 6469, 2018 WL 5456654, at *14 (E.D.N.Y. Sept. 8, 2018).[14]

## CONCLUSION

For all the reasons stated above, the Court should deny Amazon's motion to dismiss and allow Plaintiffs' claims to proceed.

---

[14] *Myers v. Hertz Corp.*, cited by Amazon, is inapposite. *See* 624 F.3d 537, 546 (2d Cir. 2010). The plaintiffs in that case attempted to use § 191 to recover overtime wages under the Fair Labor Standards Act—not to recover wages withheld under the N.Y. Labor Law. *Id.* at 543-46 & n.1; *see also Cavalotti*, 2018 WL 5456654, at *13 n.12 (distinguishing *Myers* and subsequent cases limiting § 191's protections to the timeliness of wage payments).

24

RESPECTFULLY SUBMITTED AND DATED this 25th day of August, 2020.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Toby J. Marshall, *Admitted Pro Hac Vice*
    Amanda M. Steiner
    Blythe H. Chandler, *Admitted Pro Hac Vice*
    Erika L. Nusser, *Admitted Pro Hac Vice*
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450
    Email: bterrell@terrellmarshall.com
    Email: tmarshall@terrellmarshall.com
    Email: asteiner@terrellmarshall.com
    Email: bchandler@terrellmarshall.com
    Email: enusser@terrellmarshall.com

    Juno Turner
    David Seligman, *Admitted Pro Hac Vice*
    Valerie Collins, *Admitted Pro Hac Vice*
    TOWARDS JUSTICE
    1410 High Street, Suite 300
    Denver, Colorado 80218
    Telephone: (720) 441-2236
    Facsimile: (303) 957-2289
    Email: juno@towardsjustice.org
    Email: david@towardsjustice.org
    Email: valerie@towardsjustice.org

    Sienna Fontaine
    Elizabeth Jordan
    Frank Kearl
    MAKE THE ROAD NEW YORK
    92-10 Roosevelt Avenue
    Jackson Heights, New York 11372
    Telephone: (718) 565-8500
    Email:
    elizabeth.joynesjordan@maketheroadny.org
    Email: frank.kearl@maketheroadny.org
    Email: sienna.fontaine@maketheroadny.org

Karla Gilbride
Stephanie K. Glaberson
PUBLIC JUSTICE
1620 L. St, NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Facsimile: (202) 232-7203
Email: kgilbride@publicjustice.net
Email: sglaberson@publicjustice.net

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on August 25, 2020, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

> Avi Weitzman
> GIBSON, DUNN & CRUTCHER LLP
> 200 Park Avenue
> New York, New York 10166
> Telephone: (212) 351-4000
> Email: aweitzman@gibsondunn.com
>
> Jason C. Schwartz, *Admitted Pro Hac Vice*
> GIBSON, DUNN & CRUTCHER LLP
> 1050 Connecticut Avenue, N.W.
> Washington, D.C. 20036
> Telephone: (202) 955-8500
> Email: jschwartz@gibsondunn.com
>
> Karl G. Nelson*, Admitted Pro Hac Vice*
> GIBSON, DUNN & CRUTCHER LLP
> 2001 Ross Ave., Suite 2100
> Dallas, Texas 75201
> Telephone: (214) 698-3100
> Email: knelson@gibsondunn.com
>
> *Attorneys for Defendants*

DATED this 25th day of August, 2020.

> TERRELL MARSHALL LAW GROUP PLLC
>
> By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
>    Beth E. Terrell, *Admitted Pro Hac Vice*
>    936 North 34th Street, Suite 300
>    Seattle, Washington 98103-8869
>    Telephone: (206) 816-6603
>    Facsimile: (206) 319-5450
>    Email: bterrell@terrellmarshall.com
>
>    *Attorneys for Plaintiffs*