UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DERRICK PALMER, KENDIA MESIDOR, BENITA ROUSE, ALEXANDER ROUSE, BARBARA CHANDLER, LUIS PELLOT-CHANDLER, and DEASAHNI BERNARD,

    Plaintiffs,

vs.

AMAZON.COM, INC., and AMAZON.COM SERVICES LLC,

    Defendants.

Case No. 1:20-cv-2468-BMC

**Oral Argument Requested**

---

# DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

    I.      OSHA Has Primary Jurisdiction Over Workplace Safety ..................................... 1

    II.     Plaintiffs' Challenge To Amazon's Productivity Policies Is Jurisdictionally Defective ................................................................................................................ 3

    III.    Plaintiffs Fail To State A Section 200 Claim .......................................................... 4

    IV.    Plaintiffs Fail To State A Public-Nuisance Claim .................................................. 5

    V.     The Workers' Compensation Law Bars The Employee-Plaintiffs' Public-Nuisance And Section 200 Claims ......................................................................... 8

    VI.    The Court Should Dismiss Plaintiffs' Section 191 Claims .................................... 9

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
  96 N.Y.2d 280 (2001) ................................................................................................6

*In re AFL-CIO*,
  2020 WL 3125324 (D.C. Cir. June 11, 2020) ..........................................................4, 5

*Alharbi v. Miller*,
  368 F. Supp. 3d 527 (E.D.N.Y. 2019) ........................................................................3

*Amalgamated Transit Union Local 1277 v. Los Angeles Cty. Metro. Transp. Auth.*,
  132 Cal. Rptr. 2d 207 (2003) .....................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................8

*Birke v. Oakwood Worldwide*,
  169 Cal. App. 4th 1540 (2009) ..................................................................................7

*Boom v. City of Utica*,
  2 Barb. 104 (N.Y. Gen. Term. 1848) .........................................................................7

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
  59 N.Y.2d 314 (1983) ................................................................................................6

*Cavalotti v. Daddyo's BBQ, Inc.*,
  2018 WL 5456654 (E.D.N.Y. Sept. 8, 2018) .............................................................9

*City of New York v. Beretta U.S.A. Corp.*,
  315 F. Supp. 2d 256 (E.D.N.Y. 2004) .......................................................................7

*Goya Foods, Inc. v. Tropicana Prods., Inc.*,
  846 F.2d 848 (2d Cir. 1988) .......................................................................................3

*Guiry v. Goldman, Sachs & Co.*,
  814 N.Y.S.2d 617 (1st App. Div. 2006) ..................................................................10

*Hall St. Assocs., LLC v. Mattel, Inc.*,
  552 U.S. 576 (2008) ...................................................................................................8

*Heilweil v. Mount Sinai Hosp.*,
  32 F.3d 718 (2d Cir. 1994) .........................................................................................2

*Hunter v. Time Warner Cable Inc.*,
   2019 WL 3812063 (S.D.N.Y. Aug. 14, 2019) ................................................................... 4

*Levy v. Verizon Info. Servs., Inc.*,
   498 F. Supp. 2d 586 (E.D.N.Y. 2007) ........................................................................... 10

*Meeker v. Van Rensselaer*,
   15 Wend. 387 (N.Y. Sup. Ct. 1836) ................................................................................. 7

*Mordkofsky v. V.C.V. Dev. Corp.*,
   76 N.Y.2d 573 (1990) ...................................................................................................... 4

*NAACP v. AcuSport, Inc.*,
   271 F. Supp. 2d 435 (E.D.N.Y. 2003) ............................................................................. 7

*Nat'l Commc'ns Ass'n, Inc. v. AT&T*,
   46 F.3d 220 (2d Cir. 1995) ......................................................................................... 2, 3

*New York v. Schenectady Chems., Inc.*,
   479 N.Y.S.2d 1010 (3d App. Div. 1984) ......................................................................... 7

*Ortega v. Liberty Holdings, LLC*,
   976 N.Y.S.2d 147 (2d App. Div. 2013) ........................................................................... 5

*Pres. at Connetquot HOA, Inc. v. Costco Wholesale Corp.*,
   2019 WL 337093 (E.D.N.Y. Jan. 28, 2019) ................................................................. 10

*Raritan Dev. Corp. v. Silva*,
   91 N.Y.2d 98 (1997) ...................................................................................................... 10

*Roth v. City of St. Joseph*,
   147 S.W. 490 (Mo. Ct. App. 1912) ................................................................................. 7

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013) .............................................................................................. 8

*Shain v. Ellison*,
   356 F.3d 211 (2d Cir. 2004) ..................................................................................... 4, 10

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
   761 N.Y.S.2d 192 (1st App. Div. 2003) .......................................................................... 8

*Tierney v. Capricorn Inv'rs, L.P.*,
   592 N.Y.S.2d 700 (1st App. Div. 1993) .......................................................................... 9

*Truelove v. Ne. Capital & Advisory, Inc.*,
   95 N.Y.2d 220 (2000) .................................................................................................... 10

*Wagschal v. Skoufis*,
    442 F. Supp. 3d 612 (S.D.N.Y. 2020) ...................................................................................4

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..............................................................................................................3

**Statutes**

29 U.S.C. § 653 ...............................................................................................................................4

29 U.S.C. § 658 ...............................................................................................................................3

29 U.S.C. § 662 ...............................................................................................................................3

N.Y. Lab. Law § 190 ..................................................................................................................9, 10

N.Y. Lab. Law § 191 .......................................................................................................................9

N.Y. Lab. Law § 198-c ....................................................................................................................9

N.Y. Workers' Comp. Law § 11 ..................................................................................................8, 9

**Other Authorities**

CDC, *Interim Guidance for Businesses and Employers* (May 6, 2020) .........................................2

Laws of New York, 1914 vol. I 216 ................................................................................................8

N.Y. Dep't of Health, *Interim Guidance for Wholesale Trade Sector* (June 26,
    2020) .....................................................................................................................................2

*New York Paid Family Leave COVID-19: FAQs* .........................................................................10

## INTRODUCTION

Plaintiffs' Opposition confirms that this lawsuit has no place in court.  Plaintiffs urge the Court to take over OSHA's role in regulating "the working conditions at JFK8," Opp. 1, but Plaintiffs' disagreement with OSHA's management of the pandemic provides no basis to shift responsibility for crafting workplace-safety requirements onto this Court.  Similarly, Plaintiffs' arguments against OSH Act preemption fail because their Section 200 claim is not a generic tort subject to the savings clause but rather an attempt to formulate a workplace-safety regime.  And adopting Plaintiffs' position regarding public-nuisance law would expand its scope beyond recognition, leading to a deluge of pandemic litigation.  Furthermore, although Plaintiffs contend that they suffer a unique injury allowing them to supplant the government's authority, they allege only a difference in degree, not in kind, and that is not sufficient.  Plaintiffs also lack standing, pursue moot claims, and offer no more than implausible speculation to show causation.  Finally, Plaintiffs' Section 191 claims fail because the plain text of the Labor Law makes that section inapplicable to quarantine benefits.  The Court should dismiss Plaintiffs' claims with prejudice.

## ARGUMENT

### I. OSHA Has Primary Jurisdiction Over Workplace Safety.

Plaintiffs' effort to dictate "working conditions at JFK8," Opp. 1, makes this the paradigmatic case for deference.  Plaintiffs' lawsuit does not simply "require the application of law to disputed facts." *Id.* at 2.  Rather, Plaintiffs ask this Court to make technical policy judgments about how to protect workers during this pandemic in a constantly changing environment.  Indeed, Plaintiffs would have the Court mandate workplace practices that are neither required nor even recommended by the intentionally flexible federal and state interim guidance on which Plaintiffs

rely.[1]  In particular, Plaintiffs ask this Court to:

- establish policies governing when employees need "not attend work," Am. Compl. ¶ 362(c)(i), and mandate that Amazon "[c]ontinue" to communicate its internal productivity policies "in writing," *id*. ¶ 362(c)(ii), even though the N.Y. Guidance (at 7) suggests only that entities "should" develop "a communications plan," without dictating medium or content;

- freeze Amazon's current productivity policies in place, Am. Compl. ¶ 362(c)(iii), despite the guidance never even addressing productivity policies;

- determine what constitutes an "adequate" amount of "time and tools" for employees to clean their workstations, *id*. ¶ 362(c)(iv), although the guidance speaks only generally about entities "provid[ing]" supplies and "encourag[ing]" their use, N.Y. Guidance at 6;

- mandate that Amazon "[e]nsure that workers have access to air-conditioned break rooms," Am. Compl. ¶ 362(c)(v), despite the absence of any guidance on this topic;

- prescribe Amazon's contact-tracing practices, *id.* ¶ 362(c)(vii), even though the guidance in no way counsels against Amazon's contact-tracing method, N.Y. Guidance at 8; and

- force Amazon to give every employee "immediate access" to "48 hours of" paid time off "for the remainder of 2020," "even if [the employees] have not yet accrued" that time, Am. Compl. ¶ 362(c)(viii), a request that Plaintiffs do not even attempt to tie to any guidance.

As Plaintiffs' own case explains, the Court should defer to OSHA here because Plaintiffs ask the Court to assess not a "pinpoint" legal matter but an "abstract" technical question that should "be reviewed by an agency." *Nat'l Commc'ns Ass'n, Inc. v. AT&T*, 46 F.3d 220, 223 (2d Cir. 1995).

Plaintiffs' real grievance is with OSHA's priorities, Opp. 2–3, but OSHA has decided to protect workers using existing regulations, flexible guidance, and tactical enforcement, including thousands of investigations and hundreds of inspections related to COVID-19.  *See* Mot. 4–5. Where, as here, a "plaintiff cho[oses] not to litigate th[e] issue before the [agency]," it is "correct[]" for the district court to "avoid[] ruling on the merits of her claim." *Heilweil v. Mount Sinai Hosp.*,

---

[1] *See* N.Y. Dep't of Health, *Interim Guidance for Wholesale Trade Sector*, https://on.ny.gov/3hHBksL (June 26, 2020) ("N.Y. Guidance"); CDC, *Interim Guidance for Businesses and Employers*, https://bit.ly/3b8KTON (May 6, 2020).  Plaintiffs call this guidance "mandatory," Opp. 6, but provide flimsy support for that assertion and do not rebut Amazon's extensive explanation that this guidance: (1) is not binding, (2) does not address most of Plaintiffs' proposed measures, and (3) in any event does not give rise to any private right of action.  *See* Mot. 7.

2

32 F.3d 718, 726 (2d Cir. 1994). Plaintiffs also decry the "delay" of waiting "up to six months" for OSHA's citation process, Opp. 2–3, but a few months hardly qualifies as "delay" compared to the timeline of typical litigation. And OSHA can seek *immediate* relief where warranted. 29 U.S.C. §§ 658, 662. Administrative delay must be significant—such as "two to five years"—to be relevant. *Nat'l Commc'ns*, 46 F.3d at 225. Moreover, Plaintiffs cannot complain of delay given that they abandoned their request for a preliminary injunction and never complained to OSHA.

Finally, Plaintiffs attempt to evade OSHA's jurisdiction by arguing that their claims rely solely on *state* guidance. But the Amended Complaint repeatedly relies on *federal* guidance. *See* Am. Compl. ¶¶ 80–83, 325–26, 362. Moreover, Plaintiffs' proposed injunction is premised on Amazon's purported failure to provide a "safe workplace," Opp. 10, but Congress has "entrust[ed] [OSHA]—not private litigants—with regulating occupational health and safety." OSHA Post-Hearing Br. 1, *Does v. Scalia*, No. 3:20-cv-1260 (M.D. Pa. Aug. 21, 2020), ECF No. 46 (attached as Ex. A). As Plaintiffs' own case states, "[t]he doctrine of primary jurisdiction represents a version of the administrative exhaustion requirement" that "transfers from court to agency the power to determine" the occupational-safety issues in this lawsuit. *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988). That principle is squarely implicated here.

## II. Plaintiffs' Challenge To Amazon's Productivity Policies Is Jurisdictionally Defective.

Plaintiffs argue that they may challenge Amazon's suspended internal productivity policies because unidentified current or future workers might be "unaware" of those policies and because Amazon might eventually resume its prior policies. Opp. 15, 17. But Plaintiffs acknowledge that "Amazon communicated" the suspension "in writing to all workers" in July. ECF No. 60, at 1; Am. Compl. ¶ 221. Plaintiffs' own claims are thus moot, *Alharbi v. Miller*, 368 F. Supp. 3d 527, 550 (E.D.N.Y. 2019) (Cogan, J.), and Plaintiffs cannot rest their claims "on the legal rights or interests of third parties" not before the Court, *Warth v. Seldin*, 422 U.S. 490, 499 (1975),

3

particularly hypothetical third parties. Plaintiffs' speculation that some employees *might* be unaware of policy changes is insufficient to confer standing. *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004). Moreover, the voluntary-cessation exception to mootness, Opp. 16–17, does not apply because Amazon suspended its productivity policies in March, months *before* Plaintiffs filed this lawsuit, *see Hunter v. Time Warner Cable Inc.*, 2019 WL 3812063, at *17–18 (S.D.N.Y. Aug. 14, 2019). Finally, Plaintiffs' fear that Amazon will prematurely resume its prior policies is purely speculative; Plaintiffs cannot "revive" their moot claims "by speculating about [Amazon's] future actions." *Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 622 (S.D.N.Y. 2020).

### III. Plaintiffs Fail To State A Section 200 Claim.

Plaintiffs assert that their Section 200 claim is not preempted because: (1) it is covered by the OSH Act's savings clause, (2) Section 200 is a law of general applicability, and (3) OSHA has not promulgated a COVID-19-specific occupational standard. Opp. 6–9. Each argument fails.

*First*, although the OSH Act does not preempt ordinary Section 200 suits brought to recover for "injuries, diseases, or death," Mot. 11 & n.4. (quoting 29 U.S.C. § 653(b)(4)), Plaintiffs do not seek damages for past injuries; instead, Plaintiffs are seeking to deploy Section 200 to legislate desired workplace-safety standards. *See* Am. Compl. ¶ 362(c). Plaintiffs' cases, moreover, *see* Opp. 7, do not even address Section 200, let alone support an unprecedented attempt to use that statute to institute sweeping workplace-safety standards via injunctive relief.

*Second*, Plaintiffs contend that their Section 200 claim is saved from preemption because it is a law of "general applicability." Opp. 7–8. To the contrary, the New York Court of Appeals has rejected the argument that Section 200 "protect[s] members of the general public as well as workers." *Mordkofsky v. V.C.V. Dev. Corp.*, 76 N.Y.2d 573, 576–77 (1990).

*Third*, the D.C. Circuit already rejected the argument that OSHA must promulgate a new COVID-19 standard to address the pandemic. *In re AFL-CIO*, 2020 WL 3125324, at *1 (D.C. Cir.

4

June 11, 2020) (per curiam).  The court instead *endorsed* OSHA's position that it possesses ample "regulatory tools" to ensure that employers take sufficient safety measures with regard to COVID-19.  *Id.*; *see also* Mot. 5.  Plaintiffs' attempt to use state tort law to displace the Secretary of Labor's reasoned exercise of exclusive enforcement authority is therefore preempted.  *See* Mot. 10–11.

*Finally*, Plaintiffs assert that they need not "demonstrate existing injury."  Opp. 10.  Even if that were correct, Plaintiffs do not plausibly allege that the challenged practices breached a duty or actually or proximately caused an increased risk.  *See Ortega v. Liberty Holdings, LLC*, 976 N.Y.S.2d 147, 148 (2d App. Div. 2013); Mot. 11–14.  In response, Plaintiffs recite the Amended Complaint's list of Amazon's allegedly unsafe practices and speculate that their coworkers might—in violation of Amazon's policies—fail to stay home while sick or refuse to take appropriate safety precautions.  Opp. 10.  But Plaintiffs do not explain why the purported increase in their risk of contracting COVID-19 is more than speculative in light of Plaintiffs' daily activities in a city that became the "global epicenter of the pandemic" in March.  Am. Compl. ¶¶ 13, 56, 95, 327; *see also* Hearing Tr. 46:25–47:6, *Does v. Scalia*, No. 3:20-cv-1260 (M.D. Pa. Aug. 14, 2020), ECF No. 43-1 (attached as Ex. B) (given that "people leave the [workplace] and they go home, or they go shopping," or "do recreation or meet with other friends," to argue that the "mix of people" at the workplace in particular "in and of itself causes an imminent danger seems to me to be academic and ethereal but not practical in the real world").  For this reason too, the claim fails.[2]

## IV.  Plaintiffs Fail To State A Public-Nuisance Claim.

To support their public-nuisance claim, Plaintiffs argue that: (1) their risk of exposure to COVID-19 is different in kind from the risk that everyone else faces, (2) their unprecedented claim

---

[2] *See, e.g.*, Order at 7, *Wortman v. Princess Cruise Lines Ltd.*, No. 2:20-cv-4169 (C.D. Cal. Aug. 21, 2020), ECF No. 30 (attached as Ex. D) (dismissing COVID-19 case because, as in this case, the complaint did not "include factual allegations that allow[] the court to draw the reasonable inference that the defendant's conduct caused the alleged harm").

5

is a routine application of public-nuisance law, and (3) Amazon's practices are responsible for the risk that COVID-19 poses to New Yorkers. These arguments have no merit.

*First*, Plaintiffs cannot demonstrate any unique harm that allows them to bring a public-nuisance action. Mot. 14–17. Plaintiffs contend that they are "directly at risk" of increased exposure and that they are "no different from the neighbors to a landfill emitting toxins." Opp. 13. But Plaintiffs do not and could not allege that JFK8 is "emitting toxins" into the immediate vicinity; rather, Plaintiffs allege that Amazon's policies increase the spread of a worldwide virus. And unlike the unique harms that can arise from living near a landfill, COVID-19 puts everyone "directly at risk," regardless of where they live. Indeed, Plaintiffs describe the risk to the public and to themselves in the *exact same terms*: the "increased risk of spread of COVID-19." Opp. 12–13. Plaintiffs at most allege differences of degree—not of kind—and that is insufficient. *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 293–94 (2001).

Plaintiffs claim that the public "can stay in their homes and socially distance." Opp. 13. But everyone who goes to work, the grocery store, or the lobby—or interacts with a roommate or delivery or repair person—is at risk. Where an injury "becomes so general and widespread as to affect a whole community, the injury is not peculiar and the [private] action cannot be maintained." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 335 (1983). Even the New York Attorney General—an *amicus* who claims primary responsibility for preventing public nuisances and has aligned herself with Plaintiffs—recognizes "that COVID-19 is a threat to each and every New Yorker, not a special injury unique to" a subset of private plaintiffs. State Br. 18–19, *Quirk v. Difiore*, No. 1:20-cv-5027 (S.D.N.Y. Aug. 7, 2020), ECF No. 23 (attached as Ex. C).

*Second*, Plaintiffs baldly assert that JFK8 is "a paradigmatic public nuisance," Opp. 12, but Plaintiffs' cases only underscore that the workplace policies of a private employer hardly fit the

6

"paradigm" for public nuisance. *Birke v. Oakwood Worldwide* involved a challenge to second-hand smoke in an apartment complex's "outdoor common areas." 169 Cal. App. 4th 1540, 1548 (2009). In *Roth v. City of St. Joseph*, the defendant blocked a creek, leading to stagnant water near the plaintiff's land. 147 S.W. 490, 491 (Mo. Ct. App. 1912). *Boom v. City of Utica* simply noted in passing that "conveying a child sick of the small pox" in "the public street" might qualify as a public nuisance. 2 Barb. 104, 109 (N.Y. Gen. Term. 1848). And JFK8 is in no way comparable to the "extremely filthy," overcrowded boarding house that was ordered torn down by public health authorities in *Meeker v. Van Rensselaer*, 15 Wend. 387, 397 (N.Y. Sup. Ct. 1836). None of Plaintiffs' cases remotely resembles their allegations or addresses the careful balancing of public interests necessary for businesses like Amazon—which New York has deemed "essential"—to provide critical supplies to enable citizens to stay at home. Plaintiffs' radical paradigm shift would undermine that policy judgment and create an unprecedented new category of public nuisance.

*Third*, Plaintiffs fail to plausibly allege that the challenged practices cause the public's risk. *See supra* at 5. Relying on an 1881 Maryland case, Plaintiffs argue that if Amazon's policies indirectly "increase the likelihood of" COVID-19 spread by *any* amount, even if immaterial, then Amazon is responsible for the epidemic. Opp. 14. That remarkable theory would make every New Yorker who coughs without covering his mouth, along with every essential business and public transit, liable for creating a public nuisance. That is not the law. Plaintiffs' other cited cases involve allegations that a defendant was *directly* responsible for the alleged public harm.[3] Here, by contrast, the alleged "causal connection" (if any) "between [Amazon's] alleged business

---

[3] In *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435 (E.D.N.Y. 2003), the defendant was a "direct link in the causal chain resulting in injury to plaintiff." *City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 283 (E.D.N.Y. 2004) (discussing *AcuSport*). And in *New York v. Schenectady Chemicals, Inc.*, the defendant was *directly* responsible for chemical waste leaking "into a public water supply." 479 N.Y.S.2d 1010, 1013–14 (3d App. Div. 1984).

7

conduct" and public harm is simply "too tenuous and remote." *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 195–96 (1st App. Div. 2003).[4]

## V. The Workers' Compensation Law Bars The Employee-Plaintiffs' Public-Nuisance And Section 200 Claims.

New York's workers' compensation law's remedies "shall be exclusive" and "in place of any other liability whatsoever," N.Y. Workers' Comp. Law § 11, and that bar precludes injunctive relief. Mot. 20–21. Plaintiffs' response does nothing to overcome that fact. *First*, that workers *receive* compensation for workplace injury, Opp. 18, does not mean that they *gave up* only claims for compensatory damages. *Second*, Plaintiffs rely on the canon of construction that a "general term is confined to covering subjects comparable to the specifics it follows." *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 586 (2008). But Section 11's term "liability" is not a general term at the end of a list, and thus the canon has no application. And the phrase that Plaintiffs highlight—"any person otherwise entitled to recover damages, contribution, or indemnity"— addresses the *persons* other than employees who are also barred from seeking to hold an employer liable, not the *scope of the remedies barred*. Nor can the phrase limit the scope of "liability" because the phrase was not in the statute when the term "liability" was first included. Laws of New York, 1914 vol. I 216. *Third*, Plaintiffs cite a series of out-of-state cases. Opp. 18–19. But each either applied different statutory language or offered no more reasoning than Plaintiffs do. *See, e.g.*, *Amalgamated Transit Union Local 1277 v. Los Angeles Cty. Metro. Transp. Auth.*, 132 Cal. Rptr. 2d 207, 213–14 (2003) (interpreting statute prohibiting only actions "at law for

---

[4] Plaintiffs' argument that the Court cannot address proximate cause on a motion to dismiss, Opp. 15, also fails. The Court must determine, drawing on "its judicial experience and common sense," whether the allegations state a *plausible* claim that Amazon's policies at JFK8 are actually or proximately responsible for the risk that COVID-19 poses to New Yorkers. *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009); *see also, e.g.*, *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) (affirming dismissal for lack of proximate cause); *Sturm, Ruger & Co.*, 761 N.Y.S.2d at 204 (same). Plaintiffs' allegations clearly fail that test.

8

damages"). And none of the cases mentions statutory history similar to New York's decision to add the expansive phrase "any other liability whatsoever." Mot. 21 n.7. Those cases are not binding or persuasive regarding New York law. Under the plain and original meaning of Section 11, this Court should dismiss Employee-Plaintiffs' Section 200 and public-nuisance claims.

## VI. The Court Should Dismiss Plaintiffs' Section 191 Claims.

To support their claims for failure to pay full quarantine benefits within Section 191's time limit for the payment of "wages," Plaintiffs point to Section 190's definition of "wages," the COVID-19 Leave Law, and the FAQs page of a state website. Opp. 19–22. Plaintiffs also contend that they can bring class claims to prevent hypothetical future underpayments based on purported underpayments they received in the past. *Id.* at 22–23. These arguments fail.

*First*, Plaintiffs mischaracterize the definition of "wages" in Section 190. Opp. 20. "[W]ages" "include[] benefits or wage supplements as defined in section [198-c] of this article, *except for the purposes of section*[] [*191*]." N.Y. Lab. Law § 190 (emphasis added). Plaintiffs omit the emphasized portion of the definition—a critical component that makes clear that "'wages' for purposes of NYLL § 191 specifically excludes benefits and wage supplements." *Cavalotti v. Daddyo's BBQ, Inc.*, 2018 WL 5456654, at *15 (E.D.N.Y. Sept. 8, 2018). Further, Plaintiffs themselves argue that Leave Law payments fall within the statutory definition of "'benefits.'" Opp. 20 (quoting N.Y. Lab. Law §§ 190, 198-c). That concession alone dooms these claims.

*Second*, Plaintiffs argue that Defendants' cases are inapposite because they involve "contractual agreement[s]," not "a statutory entitlement." Opp. 20. But Plaintiffs ignore the fact that Section 191 applies *only if* an employee has an "enforceable contractual right to those wages." *Tierney v. Capricorn Inv'rs, L.P.*, 592 N.Y.S.2d 700, 703 (1st App. Div. 1993); Mot. 25.

*Third*, Plaintiffs urge the Court to ignore the statute and follow the FAQs on New York State's website. But agency guidance cannot trump unambiguous statutory language, and

9

Section 190 expressly excludes "benefits and wage supplements" from the ambit of Section 191. *See Raritan Dev. Corp. v. Silva*, 91 N.Y.2d 98, 100 (1997). The FAQs also conflict with the Labor Department's longstanding view that sick leave is a "benefit." Mot. 23. Further, the FAQs tell underpaid employees to "file a complaint with the" Department. *New York Paid Family Leave COVID-19: FAQs*, https://on.ny.gov/2VCCDQD. Nowhere do the FAQs purport to allow Plaintiffs to bypass these procedures and bring a private action to enforce the Leave Law.[5]

*Fourth*, Plaintiffs lack standing to seek injunctive relief against hypothetical future Section 191 violations because they "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that" they "will be injured in the future." *Shain*, 356 F.3d at 215. Plaintiffs' alleged past injuries cannot support injunctive relief for *all* JFK8 employees to prevent future purported injuries. Mot. 22–23. The purported injury, in the context of the Section 191 claim, is not exposure to COVID-19 but rather the future possibility of being denied benefits under the Leave Law. And "[P]laintiff[s] ha[ve] failed to plead facts that establish a likelihood of future harm" for any of them personally. *Pres. at Connetquot HOA, Inc. v. Costco Wholesale Corp.*, 2019 WL 337093, at *6 (E.D.N.Y. Jan. 28, 2019).[6]

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.

---

[5] Moreover, the $2 per hour supplemental pay was a "wage supplement," not "wages." Mot. 24. It was not linked to "employees' performance," Opp. 22, it did not depend on employees' "productivity," nor did it give them "a contractual right to bonus payments" based on productivity; rather, it was "entirely discretionary and subject to [Amazon's] non-reviewable determination." *Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 224 (2000). It was provided due to the pandemic, "a variable entirely outside the employee's control," *Guiry v. Goldman, Sachs & Co.*, 814 N.Y.S.2d 617, 619 (1st App. Div. 2006), and it was "not earned" until an employee actually worked, *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 602 (E.D.N.Y. 2007).

[6] Plaintiffs also fail to demonstrate past entitlement to quarantine benefits under the Leave Law—specifically, an "order of quarantine or isolation." Mot. 23 n.8 (quoting S. 8091). Plaintiffs respond (outside their Amended Complaint) that they "would" qualify for such an order. Opp. 19 n.10. That is tantamount to a concession that Plaintiffs did not actually obtain a quarantine order.

Dated: September 1, 2020

Respectfully submitted,

<u>/s/ Jason C. Schwartz</u>
Jason C. Schwartz*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
jschwartz@gibsondunn.com

Avi Weitzman
Zainab N. Ahmad
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
aweitzman@gibsondunn.com
zahmad@gibsondunn.com

Karl G. Nelson*
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100
knelson@gibsondunn.com

*Attorneys for Defendants Amazon.Com, Inc. and Amazon.Com Services LLC*

\* Admitted *pro hac vice*