UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
DERRICK PALMER, KENDIA MESIDOR,          :
BENITA ROUSE, ALEXANDER ROUSE,           :          **MEMORANDUM DECISION**
BARBARA CHANDLER, LUIS PELLOT-           :          **AND ORDER**
CHANDLER, and DEASAHNI BERNARD,          :
                                          :          20-cv-2468 (BMC)
                      Plaintiffs,         :
          - against -                     :
                                          :
                                          :
AMAZON.COM, INC. and AMAZON.COM           :
SERVICES LLC,                             :
                                          :
                      Defendants.         :
-------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs challenge defendants' compliance with state and federal public health guidance

and law during the COVID-19 pandemic.  The amended complaint asserts claims for (i) public

nuisance, (ii) breach of the duty to provide a safe workplace, (iii) failure to timely pay COVID-

19 leave, and (iv) an injunction against future failure to timely pay COVID-19 leave.

Before me is defendants' motion to dismiss the amended complaint.  It is granted without

prejudice as to plaintiffs' claims for public nuisance and breach of the duty to provide a safe

workplace, pursuant to the doctrine of primary jurisdiction, and with prejudice as to plaintiffs'

claims for failure to timely pay COVID-19 leave.

## BACKGROUND[1]

### A.    The Parties

Defendants Amazon.com, Inc. and Amazon.com Services LLC (together, "Amazon")

operate a facility, the JFK8 fulfillment center, located on Staten Island.  JFK8 runs twenty-four

---

[1] Unless otherwise noted, the below facts are taken from plaintiffs' complaint and assumed to be true for purposes of
this motion.  See Kolbasyuk v. Capital Mgmt. Servs., LP, 918 F.3d 236, 239 (2d Cir. 2019).

hours a day, seven days a week, and is larger than fourteen football fields.  The facility employs thousands of workers.

Plaintiffs are employees working at JFK8 and people who live with those employees. Derrick Palmer works as a Warehouse Associate, Process Guide and Picking Master at JFK8. As a Picking Master, he picks customer orders, repeatedly touching items that have been touched by other workers.  His role as a Process Guide requires close interaction with other associates. Kendia Mesidor lives with Mr. Palmer and faces a heightened risk of infection or complications from COVID-19.

Benita Rouse works as a Problem Solver at JFK8.  In this role, she assesses whether damaged items can be re-sold, requiring her to touch items that have been handled by other workers, and requiring close interaction with other workers and the use of the same equipment. Alexander Rouse is Ms. Rouse's child and lives with her.

Barbara Chandler works as a Process Assistant at JFK8.  In this role, she helps manage, supervise, and coach a team of about fifty people and has to interact closely with other workers. Ms. Chandler tested positive for COVID-19 in March 2020 and several members of her household also experienced symptoms, including her cousin, who died in April 2020.  Luis Pellot-Chandler is Ms. Chandler's child and lives with her.  He also experienced symptoms of COVID-19.  Ms. Chandler claims that she was not timely or fully compensated for her COVID-19 sick leave.

Deasahni Bernard is a member of the robotics team at JFK8.  Ms. Bernard claims that she was not timely and fully paid for her COVID-19 sick leave.

B.      **COVID-19 and Workplace Guidance**

The novel coronavirus, SARS-CoV-2, and its associated disease, COVID-19, is potentially lethal, has no known cure, no particularly effective treatment, and no vaccine.  So far this year, it has infected over 512,000 people and killed over 33,000 people in New York State alone.[2]

COVID-19 can spread through contact, respiratory droplets, and aerosols.[3]  To slow the spread of COVID-19, the Centers for Disease Control and Prevention ("CDC") recommends frequent hand washing and disinfection of surfaces, mask wearing, and social distancing by keeping six feet away from other people and limiting contact with others outside one's household, whether indoors or outdoors.[4]

The State of New York has issued industry-specific guidance for businesses operating during the COVID-19 pandemic known as the "New York Forward" plan.  The guidance for the Wholesale Trade Sector directs businesses to:  operate at reduced capacity unless more workers are needed to continue safe operations; implement policies to minimize touching of shared surfaces; increase sanitization of workstations and shared surfaces and equipment; provide hand washing stations and supplies; stagger shifts and tasks to minimize congestion; conduct regular cleaning; allocate time during shifts for cleaning if workers are to clean their own stations; conduct health screenings of all people entering the facility and keep a log of responses; provide

---

[2] New York Covid Map and Case Count, N.Y. TIMES (updated Oct. 31, 2020), https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html.

[3] Scientific Brief: SARS-CoV-2 and Potential Airborne Transmission, CTRS. DISEASE CONTROL & PREVENTION (updated Oct. 5, 2020), https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html.

[4] How to Protect Yourself & Others, CTRS. DISEASE CONTROL & PREVENTION (updated Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

information to local authorities to assist in contact tracing; and develop a communications plan to provide employees, visitors, and customers with information.[5]

New York further instituted a new law requiring large employers like Amazon to provide, with certain limitations, at least fourteen days of paid sick leave to employees subject to a mandatory or precautionary order of quarantine or isolation due to COVID-19.

The CDC also published guidance for employers and employees operating during the pandemic.  Those guidelines recommend, among other things, that employers develop flexible leave policies, approve sick leave without requiring a positive test or doctor's note, reduce face-to-face contact between employees, take steps to reduce transmission at the workplace, establish policies to identify workers who may have been exposed to COVID-19 and aid in contact tracing, encourage hand washing and social distancing, and increase ventilation and sanitization.

## C.   The Amended Complaint

Plaintiffs filed this action and a motion for a preliminary injunction.  They subsequently withdrew their motion for a preliminary injunction and filed an amended complaint.  This case is before me on Amazon's motion to dismiss the amended complaint.

The amended complaint asserts claims for (i) public nuisance and (ii) breach of the duty to protect the health and safety of employees under New York Labor Law ("NYLL") § 200, seeking a declaratory judgment under 28 U.S.C. § 2201 for both of these causes of action, as well as claims for (iii) failure to timely pay earned wages under NYLL § 191, and (iv) an injunction against future NYLL § 191 violations.  Plaintiffs seek injunctive relief for their first, second, and fourth causes of action, and damages for their third cause of action.

---

[5] I assume for purposes of this motion that the Wholesale Trade Sector guidance as described by plaintiffs applies to Amazon's JFK8 facility.

4

Plaintiffs claim that Amazon's operations at JFK8 fail to comply with applicable workplace guidance. They first argue that Amazon's productivity requirements prevent employees from engaging in basic hygiene, sanitization, and social distancing. Amazon tracks employees in real time to determine whether they perform a task in each minute and aggregates a total time off task ("TOT") every day. Employees are warned and penalized, including potentially with termination, if their TOT exceeds certain amounts. TOT is automatically counted even during paid rest breaks, including bathroom breaks, and requires supervisors to re-code certain TOT activities to prevent them from being counted against the employee. Plaintiffs claim that employees' fear of accumulating TOT causes them to skip hand washing and sanitizing their workstations, and rush through the facility in a way that prevents social distancing. Amazon officially suspended rate requirements in March 2020, but plaintiffs claim that the change was not effectively communicated to employees until July, there is still confusion over the policy, and the productivity requirements could be reinstated at any time.[6]

Plaintiffs also claim that only two of the breakrooms at JFK8 are air conditioned, causing workers to cluster in those areas on hot days, further impeding social distancing.

Amazon conducts contact tracing for COVID-19 infections among its employees, but plaintiffs claim that it fails to do so adequately. They allege that Amazon uses surveillance to track potentially infected employees' movements but does not interview infected workers to discuss their contacts and discourages those workers from informing others that they may be at risk. In addition, workers who have had contact with infected workers were not asked whether they have any symptoms before Amazon authorized them to return to work.

---

[6] In a filing dated October 16, 2020, Amazon admitted that it has resumed productivity feedback for some employees.

Plaintiffs also take issue with Amazon's application of New York's COVID-19 leave law, claiming that Amazon has failed to clearly communicate to its employees the availability of leave related to COVID-19 and failed to promptly pay workers the required leave. They argue that Amazon's existing leave policies are inadequate to encourage workers to take time away from work if they are experiencing symptoms of COVID-19 or have been exposed to it. Amazon's unpaid leave accrues slowly, is deducted when employees are late to work, and the loss of adequate leave to cover such lateness can lead to termination.  Because Amazon's Paid Time Off ("PTO") leave accrues slowly, it is functionally unavailable to new workers.  Plaintiffs further claim that Amazon fails to adequately communicate information about the availability of leave and fails to promptly approve leave.

Plaintiffs argue that Amazon fails to pay employees for the full amount of the leave to which they are entitled under New York's leave law in a timely fashion.  Ms. Chandler and Ms. Bernard had to navigate a complex Human Resources system to obtain their COVID-19 leave and pay and did not receive the pay promptly in the next pay period.  Ms. Chandler and Ms. Bernard ultimately received pay for fewer hours than they would have worked in the pay period and did not receive the extra $2 per hour hazard pay for those hours.  Further, Ms. Chandler was paid at a short-term disability rate of her hourly wage, rather than the full wage, for the days she was on COVID-19-related leave in excess of fourteen days.

Plaintiffs seek injunctive relief regarding Amazon's operation of JFK8, communication to its employees, and sick leave payments.  Their proposed injunction would require Amazon to:

- Communicate clearly with workers that if they are experiencing symptoms of COVID-19 or otherwise may be subject to a quarantine, they should consult a physician or public health professional and not attend work, that they will not face any adverse employment consequences for taking quarantine leave, and that they will be paid on their next paycheck for taking quarantine leave;

- Continue suspending rate requirements and refrain from counting hand washing and bathroom breaks against TOT requirements, and communicate these policies to workers;

- Provide workers with adequate time and tools to clean and disinfect their workstations;

- Provide access to air-conditioned break rooms where workers can maintain social distancing;

- Comply with New York's COVID-19 paid leave law;

- Either a) delegate all contact tracing responsibilities to the local health department or another independent, trained professional without relying on its own surveillance footage to determine which workers have been in contact with one another or, if Amazon continues to perform contact tracing itself, then b) conform those efforts to New York and CDC guidance for contact tracing, such as interviewing the infected individual about others with whom they have been in touch, accounting for their activities in the 48 hours before diagnosis or onset of symptoms, and following up with all identified contacts of the infected individual to inform them of their exposure and inquire if they are experiencing symptoms;

- Allow workers immediate access to forty-eight hours of paid time off even if they have not yet accrued it for the remainder of 2020.

Plaintiffs Bernard and Chandler also seek damages for Amazon's failure to timely pay their COVID-19 sick leave pay.

## DISCUSSION

In deciding a motion to dismiss under Federal Rules of Civil Procedure rule 12(b)(6), the Court must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**A.      The primary-jurisdiction doctrine applies to plaintiffs' public nuisance and NYLL § 200 claims**

The doctrine of primary jurisdiction seeks to maintain a proper balance between the roles of courts and administrative agencies.  See Tassy v. Brunswick Hosp. Ctr., Inc., 296 F.3d 65, 68 (2d Cir. 2002).  "The doctrine allows a district court to refer a matter to the appropriate administrative agency for ruling in the first instance, even when the matter is initially cognizable by the district court."  Rural Cmty. Workers All. v. Smithfield Foods, Inc., 459 F. Supp. 3d 1228, 1240 (W.D. Mo. 2020) (quoting Access Telecomms. v. Sw. Bell Tel. Co., 137 F.3d 605, 608 (8th Cir. 1998)).  "[T]he reasons for its existence and the purposes it serves are twofold: the desire for uniformity and the reliance on administrative expertise."  Tassy, 296 F.3d at 68.  "Thus, in determining whether to apply the primary jurisdiction doctrine, [courts] must examine whether doing so would serve either of these purposes."  Id.

There is no fixed formula for applying the doctrine.  See United States v. W. Pac. R. Co., 352 U.S. 59, 64 (1956).  Courts in this Circuit generally consider four factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and
>
> (4) whether a prior application to the agency has been made.

Ellis v. Tribune Television Co., 443 F.3d 71, 82-83 (2d Cir. 2006).  Courts "must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings."  Id. (quoting Nat'l Commc'ns Ass'n, Inc. v. AT&T Co., 46 F.3d 220, 223 (2d Cir. 1995)).

The Occupational Safety and Health Administration ("OSHA") is the federal agency within the Department of Labor specifically charged with regulating health and safety in the workplace.  It has the primary responsibility for setting and enforcing standards and providing research, information, education, and training to assure safe and healthful working conditions.  OSHA has broad prosecutorial discretion to carry out its enforcement responsibilities under the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. § 651 *et seq.*  See Nat'l Roofing Contractors Ass'n v. U.S. Dep't of Labor, 639 F.3d 339, 343 (7th Cir. 2011).  The OSH Act permits employees who believe that a violation of a safety or health standard – or an imminent danger – exists at their workplace to request an inspection by filing a complaint with the Secretary of Labor.  See 29 U.S.C. § 657(f)(1).  If the Secretary determines that there are reasonable grounds to believe that such a violation or danger exists, the Secretary must initiate an inspection "as soon as practicable, to determine if such violation or danger exists."  Id.  If the Secretary believes, as a result of an investigation, that the employer has violated the OSHA requirements, he will issue a citation to the employer.  See 29 U.S.C. § 658(a).

OSHA's enforcement actions are subject to review by the Occupational Safety and Health Review Commission ("OSHRC"), a specialized body, and OSHRC's decisions are reviewable by federal courts of appeals.  See 29 U.S.C. §§ 660-661.  In addition, the OSH Act provides a narrow vehicle to seek mandamus in federal district court "to restrain any conditions or practices . . . [where] a danger exists which could reasonably be expected to cause death or serious physical harm immediately" pending the outcome of a potential enforcement proceeding or where a recommendation by an OSHA inspector is arbitrarily rejected by the Secretary.  29 U.S.C. § 662.

OSHA has not issued a standard specific to COVID-19, relying instead on optional guidance[7] and existing standards for, *inter alia*, personal protective equipment, general environmental controls, and toxic and hazardous substances, as well as employers' obligations under the OSH Act's general duty clause.[8]  This does not mean, however, that OSHA has abdicated its responsibilities during the pandemic.  Rather, the agency has exercised its discretion in determining how to proceed in the face of an evolving pandemic fraught with uncertainty.  The agency has "reasonably determined" that a standard "is not necessary at this time" to combat this unprecedented pandemic because it has existing regulatory tools at its disposal "to ensure that employers are maintaining hazard-free work environments."  In re Am. Fed'n of Labor & Cong. of Indus. Orgs., No. 20-1158, 2020 WL 3125324, at *1 (D.C. Cir. June 11, 2020).

OSHA continues to use its enforcement mechanisms during the pandemic.  According to its website, OSHA has received nearly 10,000 COVID-19-related complaints at the federal level, including almost 200 from the general warehousing and storage industry, opened over 1,000 federal inspections, and issued around 150 citations.[9]

Plaintiffs argue that their workplace safety claims simply "require the application of law to disputed facts" and do not implicate OSHA's expertise and discretion.  I disagree.  The central issue in this case is whether Amazon's workplace policies at JFK8 *adequately* protect the safety of its workers during the COVID-19 pandemic.  No doubt, shutting down JFK8 completely

---

[7] See Guidance on Preparing Workplaces for COVID-19, OSHA (2020), https://www.osha.gov/Publications/OSHA3990.pdf.

[8] See COVID-19 Standards, OSHA (last visited Oct. 30, 2020), https://www.osha.gov/SLTC/covid-19/standards.html.

[9] See COVID-19 Response Summary, OSHA (last visited Oct. 30, 2020), https://www.osha.gov/enforcement/covid-19-data#fed_inspections_open; Inspections with COVID-related Citations, OSHA (last updated Oct. 22, 2020), https://www.osha.gov/enforcement/covid-19-data/inspections-covid-related-citations.

during the pandemic while continuing to provide employees with pay and benefits would be the best protection against contagion at the workplace.  But someone has to strike a balance between maintaining some level of operations in conjunction with some level of protective measures.  The question is whether it should be OSHA or the courts.

Plaintiffs seek relief that involves detailed aspects of how Amazon regulates its workplace, from how Amazon manages employee productivity, to the time and tools provided to sanitize workstations, to the availability of air-conditioned break rooms, among other injunctive mandates.  Plaintiffs' claims thus turn on factual issues requiring both technical and policy expertise.  They would have me analyze how Amazon's employment practices and policies impact transmission of a poorly understood disease in JFK8, determine whether those policies create an unsafe workplace or otherwise violate state and federal guidance and standards, and implement and oversee new workplace policies.  But courts are not expert in public health or workplace safety matters, and lack the training, expertise, and resources to oversee compliance with evolving industry guidance.  Plaintiffs' claims and proposed injunctive relief go to the heart of OSHA's expertise and discretion.

The risk of inconsistent rulings further weighs in favor of applying the doctrine of primary jurisdiction.  This case concerns state and federal guidance addressing workplace safety during a pandemic for which there is no immediate end in sight.  Regulating in the age of COVID-19 is a dynamic and fact-intensive matter fraught with medical and scientific uncertainty.  There is room for significant disagreement as to the necessity or wisdom of any particular workplace policy or practice.  Courts are particularly ill-suited to address this evolving situation and the risk of inconsistent rulings is high.  Court-imposed workplace policies could

subject the industry to vastly different, costly regulatory schemes in a time of economic crisis. A determination by OSHA, on the other hand, would be more flexible and could ensure uniformity.

It bears noting that plaintiffs have not made an application to OSHA. "If prior application to the agency is present, this factor provides support for the conclusion that the doctrine of primary jurisdiction is appropriate." Ellis, 443 F.3d at 89. A failure to apply to the agency "may weigh against referral," id., but does not in this case. Plaintiffs chose to pursue their claims in federal court rather than apply for relief from OSHA, and the other factors overwhelmingly support applying primary jurisdiction.

Finally, the advantages of applying the doctrine outweigh the potential costs of delay in the administrative proceedings. Plaintiffs' challenges to Amazon's workplace policies require the expertise of the agency tasked with regulating workplace health and safety. Although this decision will necessarily delay the implementation of plaintiffs' proposed relief, at least part of the responsibility for that delay lies with plaintiffs. Plaintiffs decided not to pursue emergency relief in this case and did not pursue a parallel track by applying to OSHA.

Accordingly, it is appropriate to apply the doctrine of primary jurisdiction to plaintiffs' public nuisance and NYLL § 200 claims. When a district court refers an issue or claim to an administrative agency under the doctrine of primary jurisdiction, it may either dismiss or stay the action. Dismissal without prejudice is preferable to a stay here so that plaintiffs may determine whether to seek relief through the appropriate administrative and regulatory framework.

**B.     Plaintiffs' public nuisance and § 200 claims would otherwise be dismissed**

Even if I did not defer to OSHA's primary jurisdiction, plaintiffs' public nuisance and NYLL § 200 claims would not survive Amazon's motion to dismiss.

1.  Public Nuisance

A cause of action for public nuisance addresses conduct that "amounts to a substantial interference with the exercise of a common right," such as endangering the health or safety of a considerable number of individuals of the public.  Benoit v. Saint-Gobain Performance Plastics Corp., 959 F.3d 491, 504 (2d Cir. 2020) (citation omitted).  Conduct that causes the spread of contagious disease can constitute such an interference if it violates the public's right to health and safety.  Cf. Tull v. United States, 481 U.S. 412, 421 n.5 (1987) (public nuisances include "the keeping of diseased animals, or a malarial pond").

"A public nuisance is a violation against the State and is subject to abatement or prosecution by the proper governmental authority."  532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc., 96 N.Y.2d 280, 292, 727 N.Y.S.2d 49, 56 (2001).  The exception is that a "public nuisance is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large."  Benoit, 959 F.3d at 505 (quoting 532 Madison, 96 N.Y.2d at 292, 727 N.Y.S.2d at 56).  The injury at issue to support a private action must be different in "kind," not simply "degree," from that suffered by the public.  See id. A private action for public nuisance cannot be maintained where the injury is "so general and widespread as to affect a whole community."  Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 334, 464 N.Y.S.2d 712, 721 (1983).

Here, plaintiffs' alleged injuries are that they have an increased risk of contracting COVID-19 and fear of the same because they work in conditions, or live with someone who does, that increase the risk of spread of COVID-19.  This injury is common to the New York City community at large.  Plaintiffs and the public alike face varying levels of risk of exposing themselves and the people they live with to the virus.  Unlike the noxious landfill, a malarial pond, or a pigsty, JFK8 is not the source of COVID-19, emitting the virus from a single source

into an otherwise healthy world.  The public at large cannot avoid COVID-19 simply by

avoiding JFK8, its immediate surrounding area, and its employees.  Instead, plaintiffs and the

public risk exposing themselves to COVID-19 nearly anywhere in this country and the world.

Both plaintiffs' concern and their risk present a difference in degree, not kind, from the

injury suffered by the public at large and thus is not actionable in a private action for public

nuisance.

    2.  NYLL § 200

For their claim under NYLL § 200, plaintiffs argue that Amazon breached its duty to

maintain a safe workplace by failing to adopt and adhere to New York's workplace guidance and

COVID-19 leave law, causing plaintiffs "emotional harm and in some cases pecuniary harm and

physical harm associated with the COVID-19 infection," as well as "likely . . . future harm."

    *i.  Plaintiffs' § 200 claim is not preempted by the OSH Act*

Amazon argues that plaintiffs' § 200 claim is preempted by the OSH Act.  Congress can

preempt state law expressly or implicitly.  See Marentette v. Abbott Labs., Inc., 886 F.3d 112,

117 (2d Cir. 2018).  Courts "start with the assumption that the historic police powers of the

States were not to be superseded by the Federal Act unless that was the clear and manifest

purpose of Congress."  Wyeth v. Levine, 555 U.S. 555, 565 (2009).  The party asserting that

federal law preempts a state law claim bears the burden of establishing preemption.  See

Marentette, 886 F.3d at 117.

"The doctrine of implied preemption will bar a state law claim where, 'under the

circumstances of a particular case, the challenged state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress.'"  In re Jackson,

972 F.3d 25, 34 (2d Cir. 2020) (quoting Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363,

373 (2000)).  "What constitutes a 'sufficient obstacle' is a 'matter of judgment, to be informed

14

by examining the federal statute as a whole and identifying its purpose and intended effects.'"

Id. (quoting Crosby, 530 U.S. at 373).

The OSH Act authorizes the Secretary of Labor to promulgate federal occupational safety and health standards.  Section 18(a) of the OSH Act provides that "[n]othing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect."  29 U.S.C. § 667(a).  An "occupational safety and health standard" under the Act is "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment."  29 U.S.C. § 652(8).  "[A] state law requirement that directly, substantially, and specifically regulates occupational safety and health is an occupational safety and health standard within the meaning of the Act."  Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 107 (1992).  "[N]onapproved state regulation of occupational safety and health issues for which a federal standard is in effect is impliedly pre-empted as in conflict with the full purposes and objectives of the OSH Act."  Id. at 98-99.

In addition to reserving for state regulation those issues not governed by a federal standard, Congress also provided states the option of completely replacing federal standards with their own.  A state may "assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated" by submitting a state "plan for the development of such standards and their enforcement."  29 U.S.C. § 667(b).

In 1973, New York submitted a plan that received the Secretary's approval, but withdrew the plan two years later.  See Irwin v. St. Joseph's Intercommunity Hosp., 236 A.D.2d 123, 127,

15

665 N.Y.S.2d 773, 777 (4th Dep't 1997).  New York thus cannot enforce state occupational

safety and health standards for issues covered by a federal standard.  See Gade, 505 U.S. at 98-

99.

Finally, "[f]ederal regulation of the workplace was not intended to be all encompassing,"

Gade, 505 U.S. at 96, and Congress further saved certain areas from federal preemption.  The

OSH Act does not "supersede or in any manner affect any workmen's compensation law" or

"enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or

liabilities of employers and employees under any law with respect to injuries, diseases, or death

of employees arising out of, or in the course of, employment.'"  29 U.S.C. § 653(b)(4).  By

including this savings clause, "Congress expressly carved out of its preemption rules state

common law and statutory tort remedies."  Bus. for a Better N.Y. v. Angello, 341 F. App'x 701,

705 (2d Cir. 2009) (New York's scaffold law is a "means to define and assign liability in height-

related construction injuries" and thus is "preserved under the savings clause"); see also Atlas

Roofing Co. v. Occupational Safety & Health Review Comm'n, 430 U.S. 442, 445 (1977)

("existing state statutory and common-law remedies for actual injury and death remain

unaffected" by the OSH Act); Tufariello v. Long Island R. Co., 458 F.3d 80, 86 & n.7 (2d Cir.

2006) (noting that the OSH Act does not preclude a negligence action for harm caused by

employer's failure to equip employee with hearing protection).

NYLL § 200 is the codification of the common law duty to maintain a safe work

environment.  See Ross v. Curtis-Palmer Hydro-Elec. Co., 81 N.Y.2d 494, 505, 601 N.Y.S.2d

49, 54 (1993).  A § 200 claim is essentially a negligence claim.  See In re World Trade Ctr.

Lower Manhattan Disaster Site Litig., 758 F.3d 202, 210 (2d Cir. 2014) (citing Haider v. Davis,

35 A.D.3d 363, 364, 827 N.Y.S.2d 179 (2d Dep't 2006)).  Because § 200 constitutes statutory

tort law, claims brought under it generally fall within the OSH Act's savings clause.

Amazon argues that the OSH Act nonetheless preempts plaintiffs' § 200 claim because

plaintiffs do not seek damages for past injuries, diseases, or death, but instead seek injunctive

relief to improve workplace-safety standards due to a fear of future disease.  Because this claim

would require the Court to institute sweeping workplace-safety standards via injunctive relief,

Amazon claims it conflicts with the purposes of the statute.

I agree that plaintiffs' claim under § 200 is in tension with the OSH Act and creates the

potential for "duplicative, and possibly counterproductive, regulation" of workplace safety.  See

Gade, 505 U.S. at 102.  Normally, "[r]egulation of workplace safety under the Labor Law and

the OSH Act are fundamentally different" because the Labor Law is "primarily remedial in

nature."  Irwin, 236 A.D.2d at 130, 665 N.Y.S.2d at 778.  The OSH Act, on the other hand, is

'prophylactic in nature.'"  Whirlpool Corp. v. Marshall, 445 U.S. 1, 12 (1980).  "The Act was

not enacted for the principal purpose of punishing employers for workplace deaths or injuries;

rather, '[i]t authorizes the promulgation of health and safety standards and the issuance of

citations in the hope that these will act to prevent deaths or injuries from ever occurring.'"

People v. Pymm, 76 N.Y.2d 511, 518, 561 N.Y.S.2d 687, 693 (1990).

The vast majority of tort claims regarding workplace safety seek damages for "injuries,

diseases, or death of employees arising out of, or in the course of, employment" and thus easily

fall within the OSH Act's savings clause.  See 29 U.S.C. § 653(b)(4).  But here, plaintiffs want

the Court to create and enforce a scheme of workplace safety standards.  As described above, this

type of regulation is within OSHA's expertise and the agency should be afforded the first

opportunity to evaluate the wisdom and necessity of such policies in the unprecedented context of the COVID-19 pandemic.

However, I cannot find that plaintiffs' § 200 claim is preempted by the OSH Act. There is a presumption that state and local regulation of matters related to health and safety are not preempted "unless that was the clear and manifest purpose of Congress." Env't Encapsulating Corp. v. City of New York, 855 F.2d 48, 53 (2d Cir. 1988) (quoting Hillsborough Cty., Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 715 (1985)). Plaintiffs' claim does not conflict with an existing federal standard and the OSH Act's savings clause expressly excludes statutory tort law claims from preemption. Although plaintiffs' proposed injunction would create a regulatory scheme that is in tension with the OSH Act's purposes, "Congress intended State law statutory and common-law duties, rights and liabilities to survive, and . . . was willing to tolerate any tension that resulted." Pymm, 76 N.Y.2d at 523-24, 561 N.Y.S.2d at 693.

> ii.  *Plaintiffs' § 200 claim for past harm is preempted by New York's Workers' Compensation Law*

Amazon next argues that plaintiffs' § 200 claim is barred by New York's Workers' Compensation Law. Plaintiffs argue that their claim is not preempted because they seek injunctive relief rather than monetary damages.

Workers' compensation benefits are the sole and exclusive remedy of an employee against his employer for injuries sustained in the course of employment. See Weiner v. City of New York, 19 N.Y.3d 852, 854, 947 N.Y.S.2d 404, 405 (2012). New York's Workers' Compensation Law states that it "shall be exclusive and in place of any other liability whatsoever" to an employee "or any person otherwise entitled to recover damages, contribution or indemnity, at common law or otherwise, on account of such injury or death or liability arising therefrom." N.Y. WORKERS COMP. LAW § 11.

The New York Court of Appeals has not considered whether the Workers' Compensation Law's exclusivity provision preempts a suit for injunctive relief. But the broad language of the exclusivity provision and the trade-offs embodied in the law compel me to conclude that the Workers' Compensation Law bars plaintiffs' § 200 claim to the extent it is based on past harm.

The "Labor Law codification of the requirement to provide a safe place to work does not overrule, and indeed, is subject to the exclusivity provisions of the Workers' Compensation Law." Bardere v. Zafir, 102 A.D.2d 422, 423, 477 N.Y.S.2d 131, 133 (1st Dep't 1984), aff'd, 63 N.Y.2d 850, 482 N.Y.S.2d 261 (1984); see Caballero v. First Albany Corp., 237 A.D.2d 800, 803, 654 N.Y.S.2d 866, 869 (3rd Dep't 1997) ("Labor Law § 200 does not provide for an exception to the exclusivity of workers' compensation . . . ."). The exclusivity provision broadly states that the workers' compensation scheme serves "in place of any other liability whatsoever" for an employer to an employee. N.Y. WORKERS COMP. LAW § 11.

It is difficult to imagine a broader phrase than "any other liability whatsoever." If "liability" was not intended to include injunctive relief, as plaintiffs argue, then the statute easily could have substituted that word with "monetary damages," "payment of compensation" or some other phrase. As plaintiffs note, the provision also discusses "damages, contribution or indemnity" and "compensation." But the statute uses the broad word "liability" within an even broader phrase, and so I must conclude that it was intended to cover suits for injunctive relief in addition to suits for damages.

This reading is further supported by the nature of the trade-offs embodied in the law. "Fixed compensation is guaranteed to the injured employee regardless of fault and in exchange for reducing the costs and risks of litigation to the parties." Gonzales v. Armac Indus., Ltd., 81 N.Y.2d 1, 8, 595 N.Y.S.2d 360, 363 (1993). In exchange for the "security" of receiving fixed

19

benefits, "the employee has been asked to pay a price in the form of the loss of his common-law right to sue his employer in tort." Billy v. Consol. Mach. Tool Corp., 51 N.Y.2d 152, 159, 432 N.Y.S.2d 879, 883 (1980). The purpose of the law therefore is not just to provide a mechanism for compensation, but also to protect employers from suit. See Weiner, 19 N.Y.3d at 854, 947 N.Y.S.2d at 405 (Workers' Compensation Law "precludes suits against an employer for injuries in the course of employment"). Allowing plaintiffs to avoid preemption by seeking only injunctive relief would thwart the purposes of the statute and the trade-offs embodied in it.

The fact that the Workers' Compensation Board does not have the authority to issue injunctive relief does not compel a contrary conclusion. Rather, it reflects the legislature's intent that the workers' compensation scheme and the remedies available under it provide the exclusive remedy for employee injuries.

Accordingly, to the extent that plaintiffs' § 200 claim is based on past injury, the claim is barred by New York's Workers' Compensation Law.

> ### iii.   Plaintiffs cannot maintain a § 200 claim for future harm

Plaintiffs' NYLL § 200 claim alleges that Amazon breached a duty causing both past harm and "likely . . . future harm." As described above, the Workers' Compensation Law bars plaintiffs' claim to the extent that it is based on past harm. To the extent that plaintiffs' § 200 claim is based on the threat of future harm, it fails to state a claim because it does not allege a cognizable injury.

As described above, NYLL § 200 is the codification of the common law duty to provide workers with a safe work environment, see Ross, 81 N.Y.2d at 505, 618 N.E.2d at 88, and is essentially a claim for common law negligence. See In re World Trade Ctr., 758 F.3d at 210; DeMaria v. RBNB 20 Owner, LLC, 129 A.D.3d 623, 625, 12 N.Y.S.3d 79, 82 (1st Dep't 2015). "The elements of a negligence claim under New York law are: '(i) a duty owed to the plaintiff by

the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.'" Pasternack v. Lab. Corp. of Am. Holdings, 807 F.3d 14, 19 (2d Cir. 2015) (citation omitted).

Plaintiffs seek to hold Amazon liable for an alleged breach of a duty that is "likely" to cause plaintiffs "to experience future harm." Even assuming *arguendo* that plaintiffs sufficiently allege a duty and breach, this claim fails because "[a] threat of future harm is insufficient to impose liability against a defendant in a tort context." Caronia v. Philip Morris USA, Inc., 22 N.Y.3d 439, 446, 982 N.Y.S.2d 40, 43 (2013) (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 30, at 165 (5th ed. 1984)). "The requirement that a plaintiff sustain physical harm before being able to recover in tort is a fundamental principle of [New York State's] tort system." Id. "The physical harm requirement serves a number of important purposes: it defines the class of persons who actually possess a cause of action, provides a basis for the factfinder to determine whether a litigant actually possesses a claim, and protects court dockets from being clogged with frivolous and unfounded claims." Id.

Because the threat of future harm does not provide a valid basis for a tort claim, plaintiffs cannot maintain their § 200 claim based on the threat of contracting COVID-19 at JFK8.[10]

## C.    Plaintiffs cannot maintain their claims under NYLL § 191

Plaintiffs Bernard and Chandler bring a claim for the failure to timely pay earned wages under NYLL § 191, claiming that Amazon failed to pay them COVID-19 leave on a timely basis. Plaintiffs also bring a claim for an injunction against future untimely payments. Amazon argues that these claims must be dismissed because COVID-19 leave does not constitute "wages" for purposes of § 191.

---

[10] Because I find that plaintiffs' § 200 claim for past harm is barred by the Workers' Compensation Law's exclusivity provision, I do not reach Amazon's argument that the claim should be dismissed because plaintiffs fail to plausibly plead causation.

Section 191 sets out the frequency of the payment of "wages" for certain categories of workers.  It specifies that manual workers' wages "shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."  NYLL § 191(1)(a)(i). "Wages" are defined as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." Id. § 190(1).  "The term 'wages' also includes benefits or wage supplements as defined in section one hundred ninety-eight-c of this article, except for the purposes of sections one hundred ninety-one and one hundred ninety-two of this article."  Id.  Section 198-c, in turn, defines "benefits or wage supplements" as including, but not limited to, "reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay."  Id. § 198-c(2). Thus, anything that qualifies as "benefits or wage supplements" is expressly excepted from the definition of "wages" for purposes of § 191's timely payment requirements.

COVID-19 leave is a form of paid sick leave.  See S. 8091 (N.Y. 2020) ("An act providing requirements for sick leave and the provision of certain employee benefits when such employee is subject to a mandatory or precautionary order of quarantine or isolation due to COVID-19").  Courts in this Circuit regularly find that sick leave constitutes a benefit or wage supplement for purposes of the Labor Law.  See Sosnowy v. A. Perri Farms, Inc., 764 F. Supp. 2d 457, 476 (E.D.N.Y. 2011) ("vacation and sick day payments" are benefits or wage supplements excepted from the definition of wages for purposes of § 191); see also Chan v. Big Geyser, Inc., No. 17-CV-06473, 2018 WL 4168967, at *5 (S.D.N.Y. Aug. 30, 2018) (suggesting that vacation and sick pay fall under § 198-c's benefits or wage supplements); Quinones v. PRC Mgmt. Co. LLC, No. 14-CV-9064, 2015 WL 4095263, at *5 (S.D.N.Y. July 7, 2015) (paid vacation and sick leave constitute wage supplements); Crawford v. Coram Fire Dist., No. 12-

CV-3850, 2015 WL 10044273, at *5 (E.D.N.Y. May 4, 2015) (suggesting that vacation and sick

pay fall are benefits or wage supplements); Litras v. PVM Int'l Corp., No. 11-CV-5695, 2013

WL 4118482, at *10 (E.D.N.Y. Aug. 15, 2013) (same).

     I come to the same conclusion.  Paid sick leave does not reflect "the earnings of an

employee for labor or services rendered" but instead constitutes a benefit or wage supplement

like vacation and holiday pay.

     Plaintiffs argue that COVID-19 leave nonetheless constitutes wages under § 191 because

the New York State Department of Labor states on the "Frequently Asked Questions" page for

COVID-19 leave that the "paid sick leave payments are subject to the frequency of pay

requirements of Section 191 of the Labor Law, and leave payments should be made in the

paycheck for the applicable pay period for the leave."[11]

     An agency's consistent and long-standing interpretation of a statute it administers is

entitled to considerable weight.  See United States v. Clark, 454 U.S. 555, 565 (1982).  But "[a]n

agency['s] interpretation of a relevant provision which conflicts with the agency's earlier

interpretation is 'entitled to considerably less deference' than a consistently held agency view."

City of New York v. U.S. Dep't of Transp., 700 F. Supp. 1294, 1300 (S.D.N.Y. 1988) (quoting

Immigr. & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 446 n. 30 (1987)).

     The Department of Labor's position is not entitled to deference here.  Its stance that

COVID-19 paid sick leave is subject to § 191's timely payment requirements is a new

interpretation of § 191 that conflicts with its prior guidance that paid sick time off is a benefit

provided at the discretion of the employer and for which "no 'correct' or prescribed method" of

provision or payment exists.  N.Y. Dep't of Labor, Request for Opinion, Personal/Sick/Vacation

---

[11] Available at: https://paidfamilyleave.ny.gov/new-york-paid-family-leave-covid-19-faqs.

Policy (Mar. 11, 2010).[12]  More importantly, the agency's position conflicts with the plain language of the Labor Law.  Benefits and wage supplements are expressly excepted from § 191's requirement to timely pay wages, and COVID-19 leave is simply a state-mandated sick leave benefit.[13]

I understand plaintiffs' position that the purpose of New York's COVID-19 leave law is to provide quarantined workers with guaranteed sick leave pay in a timely fashion.  The New York Legislature can fix this if it wants to.  But it passed the COVID-19 leave law presumably well aware that sick leave is not covered by a private right of action under § 191, making the choice to defer to the State Department of Labor.  I have to enforce the law as its plain language compels, not as the Legislature might have worded it.

## CONCLUSION

Defendant's motion to dismiss is granted.  Plaintiffs' public nuisance and NYLL § 200 claims are dismissed without prejudice pursuant to the doctrine of primary jurisdiction.  Plaintiffs' NYLL § 191 claims are dismissed with prejudice.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       November 1, 2020

---

[12] Available at: https://on.ny.gov/33pXXhh.

[13] Because I find that the COVID-19 leave categorically does not constitute wages for purposes of § 191, I do not reach plaintiffs' allegations regarding Amazon's failure to provide the full amount of paid leave owed.

24